**14**

Ex parte Kenneth Wayne McCARTER and
Robert Michael McCarter.

Patricia McCARTER, Petitioner,

v.

Elizabeth HINTON and Sterling P. Hinton,
Respondents.

No. 25181.

Kansas City Court of Appeals.

Missouri.

Nov. 1, 1968.

James E. Lyons, Kansas City, for peti-
tioner.

Donald L. Mason, Kansas City, for re-
spondents.

## ORIGINAL PROCEEDING IN HA-
## BEAS CORPUS

HOWARD, Presiding Judge.

This is an original proceeding in habeas
corpus by the natural mother seeking cus-
tody of her two minors sons, aged approxi-
mately 2 and 3 years respectively. The re-
spondents are petitioner's sister-in-law and
her husband.

In October of 1967, petitioner was sepa-
rated from her husband. She was then
living in the State of California and was
in need of assistance in taking care of her
two infant sons. She called her husband's
mother in Blackwell, Oklahoma to see if
she could help in taking care of the chil-
dren. Mrs. McCarter, Sr. was physically
unable to be of assistance but petitioner's
husband's sister (Mrs. Lake) agreed to
help take care of the children. Petitioner

and her two children arrived in Blackwell, Oklahoma in the evening of October 31, 1967. She and the children stayed for approximately one week when petitioner borrowed bus fare back to California from Mr. Lake and returned to California for the avowed purpose of securing the personal belongings of herself and her two children and returning to Oklahoma. She left the children in the Lake home. Petitioner did not return to Oklahoma when expected but after a reconciliation with her husband, she and her husband returned to Oklahoma about a month or six weeks later. Because of illness of Mrs. Lake, the oldest boy was then staying with Mrs. McCarter, Sr., and the youngest boy with Mr. and Mrs. Sterling P. Hinton, the respondents, in Easton, Kansas. Petitioner and her husband stayed a few days in the Lake home and then moved into a small house in Blackwell, Oklahoma with their oldest boy. They were without transportation in that they did not own an automobile. The evidence of the parties is conflicting as to details and dates but it appears that either sometime in January or approximately the 15th of February, petitioner and her husband bought an old car and, together with their oldest child, traveled to Easton, Kansas where the youngest child was living with Mr. and Mrs. Hinton. Mrs. Hinton was also a sister of petitioner's husband. Petitioner and her husband and the two boys stayed in the Hinton home for about two weeks and then lived in their own residence in Easton, Kansas for an additional two weeks. They then returned to California about the middle of March 1968. Petitioner and her husband thereafter separated and petitioner was contemplating, and did file suit for, divorce.

Late in May of 1968, the California Welfare Department was about to place the children in foster homes. Petitioner says this was because her husband would not support her and her children and she had no funds with which to care for them. Repondents' evidence is that petitioner stated that she would give the children to the welfare department if respondents did not take them. In any event there was a long distance telephone call made by petitioner and her husband to the respondent Elizabeth Hinton, who was then living in Malta Bend, Missouri, and as a result of this telephone call, respondent Elizabeth Hinton went to California, arriving on June 2, 1968. She testified that she told petitioner that she did not want to take the children if she was only to have them a short period of time and they then would be taken away from her; that she would only take the children if she could have them permanently. Elizabeth Hinton testified that petitioner agreed to this. Petitioner testified that she agreed to this in the telephone conversation because her husband was holding a knife in her back. When Elizabeth Hinton arrived in California, she wrote the following on a piece of scrap paper: "I Patricia Ann McCarter am giving full custody of Robert Micheal and, Kenneth Wayne McCarter, To Sterling P, and Elizabeth C Hinton to raise & care for as they see fit. And I will not try to get them at any time until they are of age to chose." This was signed by Patricia McCarter and Kenneth C. McCarter, petitioner's husband. Elizabeth Hinton testified that petitioner signed the paper voluntarily in the absence of her husband. Petitioner testified that she signed the paper in the presence of her husband and because of threats made by her husband to harm her and the children. In any event, Elizabeth Hinton returned to Missouri with the children.

Before petitioner's suit for divorce could be heard, her husband was murdered in the latter part of June in Hollywood, California. Thereafter and in September 1968, petitioner and her father came to Missouri to get the children. The Hintons were then living on a farm near Hardin in Ray County, Missouri. Respondents refused to allow petitioner to see the children and refused to turn the children over to petitioner. This proceeding in habeas corpus then followed.

In a day-long hearing before this court, the testimony of six witnesses was heard, including the testimony of petitioner and the two respondents. Much of it dealt with detailed and repeated recitals of the above history. The only evidence derogatory to petitioner was the testimony of both respondents that while petitioner, her husband and two children were staying in the Hinton home in Easton, Kansas, the petitioner habitually carried a leather belt with which she hit the oldest boy when he did not mind. They stated that she hit the boy with the belt buckle on at least two occasions and struck him on whatever part of the body was handiest whether that be his head, his bottom, his legs, or whatever. They also testified that petitioner paid no attention to the children and Mrs. Hinton had to do all the work of taking care of them. Petitioner denied this. She stated that if she regained custody of her children, she would return to California where she would live with her parents in a 6 or 7 room house. This is a rented house which presently has two bedrooms but she stated that another room could be converted into a third bedroom. In this household would be petitioner's mother and father, her 20-year old brother who is expected to go into the armed services shortly, and her 17-year old sister who is a high school student, in addition to petitioner and her two baby boys. Petitioner's mother is employed at $2.50 an hour by a plastics fabricating firm, and her father has recently established his own television repair business. He is a former employee of Sears. Petitioner also testified that she and the two boys would receive social security benefits in the approximate amount of $150.00 per month.

We are first met with a motion to quash the writ filed by respondents on the basis that we are without jurisdiction pursuant to the provisions of Civil Rule 91.59, V.A.M.R., (as amended March 13, 1961, effective November 1, 1961), and Section 532.-030, RSMo 1959, V.A.M.S., because the respondents are residents of and have custody of the minors in Ray County, Missouri, and the judge of the circuit court of that county was at all times present and such court was in session. This rule and section provide that an application for a writ of habeas corpus shall, in the first instance, be made to the judge of the circuit court for the county in which the applicant is held in custody.

Our jurisdiction to issue writs of habeas corpus is not dependent upon statutory authorization. Section 4, Article V, of the Missouri Constitution, V.A.M.S. vests this court with jurisdiction to issue and determine original remedial writs. This includes writs of habeas corpus. Concerning this constitutional jurisdiction to issue writs of habeas corpus, our Supreme Court en Banc specifically held in Ex Parte Hagan, 295 Mo. 435, 245 S.W. 336, that this constitutional jurisdiction could not be curtailed by legislation. The court said, l.c. 337: "Under the Constitution, this court is given the right to grant writs of habeas corpus. No legislative act can take away or curtail this constitutional grant." This conclusion was adhered to and reaffirmed by our Supreme Court en Banc in State ex rel. O'Connell v. Nangle, 365 Mo. 198, 280 S.W.2d 96.

We therefore conclude that we have jurisdiction to issue and determine the present writ of habeas corpus and since the respondents reside in Ray County and there have custody of the two minors in question, venue is in this court. Respondents' motion is overruled.

On the basis of the foregoing evidence, petitioner contends that she is a fit person to have custody of her children and that their best interests would be served in being in the custody of their natural mother. Respondents contend that the best interests of the children would be served by leaving them with respondents.

In any case wherein the custody of minor children is involved, the best interest of the children is of paramount im-

portance. In Shepler, Mo., 372 S.W.2d 87; In re Duncan, Mo., 365 S.W.2d 567, 4 A.L.R.3d 1270; Ex parte De Castro, 238 Mo.App. 1011, 190 S.W.2d 949. However, as is pointed out in the recent case of Stockton v. Guthary, Mo.App., 415 S.W.2d 308, l.c. 312: "* * * our courts have always considered that a natural parent's custody best serves the child's interest unless it appears that the parent is unfit, incompetent or unable to care for the child, or unless the welfare of the child manifestly calls for a different disposition under the circumstances shown." In that case, the court also said: "* * * when a contest for custody involves a choice between a natural parent and third parties, our courts have been unwilling, as we say, to discard their traditional belief that the best interest of a very young child is served by being placed in the custody of the natural parent, unless the natural parent is a wholly unsuitable custodian."

Applying the doctrine of the foregoing cases to the case at bar, we conclude that there is nothing to show that petitioner is an unfit custodian of her natural born children. The circumstances of the children's return to Missouri and petitioner's signing of the document purporting to give respondents permanent custody of the children do not militate against this conclusion. While it appears that the two boys have spent a considerable portion of the last year in the custody of others, this situation resulted from the refusal and failure of her husband to support petitioner and the children. Since he is gone, it appears that petitioner, with the aid of her parents, will be able to properly care for the children. The evidence of physical abuse appears to have been substantially exaggerated and we find that such evidence does not show petitioner to be an unfit custodian for these two young boys.

From a careful review of the evidence before us, we conclude that petitioner is a fit and proper person to have custody of her two natural born sons and that the best interests of these young children will be served by returning custody to their natural mother, the petitioner. Therefore, custody of Kenneth Wayne McCarter and Robert Michael McCarter is awarded to the petitioner, Patricia McCarter, and the respondents, Elizabeth Hinton and Sterling P. Hinton, are ordered and directed to forthwith surrender custody and control of said children to Patricia McCarter.

All concur.