Stephen N. REITER, Petitioner,

v.

George M. CAMP, Director, Missouri Department of Corrections, and Calvin L. Beard, acting Superintendent, Algoa Intermediate Reformatory for young men, Respondents.

No. 27347.

Missouri Court of Appeals, Kansas City District.

Dec. 30, 1974.

Ruppert & Schlueter, Michael C. Aufdenspring, Clayton, for petitioner.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondents.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, SOMERVILLE, WASSERSTROM and TURNAGE, JJ.

SWOFFORD, Judge.

This is a proceeding in habeas corpus wherein the petitioner asserts that he is being illegally and unlawfully confined in the Algoa Intermediate Reformatory for Young Men at Jefferson City, Missouri by reason of an order and judgment of the Circuit Court of St. Louis City, which revoked his probation.

On May 29, 1974, a writ of habeas corpus was issued from this court commanding the respondents to make return thereto on or before June 17, 1974. On that date, respondents made return and the matter was briefed by the parties and orally argued before the court.

Some preliminary matters require determination before this case is considered on its merits.

In a jurisdictional statement contained in respondents' brief, they recognize

the general constitutional power of this court to issue and determine original remedial writs as granted in Article V, Section 4, of the Missouri Constitution, V.A.M.S., but also assert that under Section 532.030 RSMo 1969, V.A.M.S., and Rule 91.59, V.A.M.R., the petitioner should be required to apply "in the first instance" for relief by *habeas corpus* in the Circuit Court of Cole County. If there was any validity to this position in the past, it has been vitiated by the provisions of Rule 84.22, which provides:

> "No original remedial writ, *except habeas corpus,* will be issued by an appellate court in any case wherein adequate relief can be afforded by an appeal or by application for such writ to a lower court." (Effective Jan. 1, 1972) (Emphasis added)

and by this court's decision in Ex parte McCarter v. Hinton, 434 S.W.2d 14, 16 [1] (Mo.App.1968) which decision followed and applied the principles declared in Ex parte Hagan, 295 Mo. 435, 245 S.W. 336, 337 [1] (Mo. banc 1922). These decisions hold that the constitutional authority to issue and determine *habeas corpus* proceedings cannot be diminished or curtailed by legislative enactment. Jurisdiction to determine this matter is lodged in this court.

■ Respondents in the first point in their brief assert that the petition herein does not state a cause of action. The thrust of this argument seems to be that, since petitioner does not contest the legality of his original conviction and sentence but only the legality of the revocation of his probation, *habeas corpus* will not lie. They further assert that he has an adequate remedy by declaratory judgment. These arguments are rejected. The petitioner is presently imprisoned in the Algoa Reformatory as a result of a revocation of his status as probationer, which he asserts was the result of an unconstitutional proceeding which denied him due process. *Habeas corpus* is the proper remedy to test the legality of his present incarceration, as will abundantly appear from the authorities hereinafter discussed. If petitioner is correct in his position, he is entitled to immediate release and restoration of his prior status as probationer. Declaratory judgment is a wholly inadequate remedy to accomplish that result.

The petitioner seeks his unconditional discharge and restoration of his status as probationer upon the ground that the Circuit Court abused its discretion in revoking his probation in two particulars. *First,* the court refused to grant petitioner a psychiatric examination; and *second,* he was not afforded due process in the revocation proceedings.

The resolution of these points requires that the history of this case, as revealed by the return to the writ and the documents attached thereto, the transcript of the revocation proceedings, and the briefs of the parties be considered.

On December 7, 1971, the petitioner entered a plea of guilty on two charges of illegal possession of narcotic drugs and was sentenced to 3 years on each of said charges, such sentences to run concurrently. On that same day, the court suspended the execution of the sentence and placed the petitioner on probation for a period of five (5) years. Section 549.071(1) RSMo 1969, V.A.M.S. One of the written conditions of that probation stated:

> "1. I shall obey all laws and ordinances of the United States, State, County or Municipality. All arrests for any reason must be reported without delay to my probation and parole officer."

On November 21, 1973, the following order was made in the two criminal causes:

> "The Probation and Parole Officer, having reported that the above named defendant, STEPHEN N. REITER, has failed to obey the laws of this State and has failed to report all arrests without delay to his Probation and Parole Officer,

IT IS HEREBY ORDERED by this Court that the probation heretofore granted be revoked and the defendant arrested and brought before this Court on Monday, December 3, 1973, at 2:00 P.M. to show cause, if any he has, why this revocation order should be set aside and probation reinstated. Defendant to be brought to Div. #18.

Capias Warrant ordered issued."

This order was entered without any prior notice to petitioner and without any hearing. A copy of the order was sent to petitioner's present counsel, who had also represented him in the criminal proceedings.

On December 3, 1973, the petitioner and his counsel being present, the court asked that the Probation and Parole Officer, Lloyd R. Stafford, read into the record his Parole Violation Report dated November 16, 1973. This was apparently the report referred to in the court's order of November 21, 1973. So far as the record shows, this occasion was the first time that either the petitioner or his counsel had been formally advised of the facts which were claimed to have placed him in violation of his probation. Mr. Stafford also identified a police report involving a "Suspicion of Burglary" arrest of the petitioner on November 11, 1973. Both the violation report and the police report were marked and admitted into evidence as exhibits by the court.

In addition to the "Suspicion of Burglary" arrest, Stafford's violation report indicated that on October 2, 1973, the petitioner was arrested for speeding. The arresting officer found a green substance which appeared to be marijuana on the seat of the car and in a bag stuffed in the toe of a shoe under the front seat and partially smoked marijuana cigarettes in the ashtray. Petitioner was booked for illegal possession of marijuana and speeding. He did not report this arrest to Mr. Stafford until October 22, 1973, at which time he admitted that he had been smoking marijuana on the evening of the arrest. He did not report the arrest of November 11, 1973 on suspicion of burglary to Mr. Stafford at any time, but Stafford became aware of this incident by reading the County Arrest Sheet. So far as this record discloses, neither of the charges arising from these arrests have ever been pressed by the prosecuting authorities.

At the hearing of December 3, 1973, at the conclusion of Mr. Stafford's testimony, the following appears:

"THE COURT: * * * Mr. Aufdenspring (counsel for petitioner), would you have any questions you'd like to ask Mr. Stafford concerning this matter?

MR. AUFDENSPRING: I have just a few questions concerning Mr. Reiter's drug addiction, I don't know how relevant it is—drug use I should say—I don't know how relevant it is but I think that this is basically a cause of the whole situation. I don't know if you would allow me to proceed on that, Your Honor.

THE COURT: I don't really think this is related to whether or not the merits of whether or not his probation which was granted back in 1971 should or should not be revoked. *It may be that at some future time in the very near future maybe Mr. Reiter should receive some attention to this situation that does exist.*

MR. AUFDENSPRING: I have no questions then.

*   *   *   *   *   *

THE COURT: On the record then. Being no further questions of Mr. Stafford—and I assume, Mr. Aufdenspring, that Mr. Reiter does not wish to testify —he has the right to either testify or not as he desires; is it a fair assumption that he does not wish to testify?

MR. AUFDENSPRING: I would not think he would want to, that he would not.

THE COURT: All right. That being the case then, the Court finds that Mr. Reiter has violated the—

MR. AUFDENSPRING: May I interrupt? I would like to make a statement on the record. I think on this matter—the only thing I would like to say is that we will carry out a request with the Department of Corrections for psychiatric help for Steve and I think this should be placed in the record because I think the—if you want to call them criminal matters—coming before the Court since 1971 have been drug-related and I think this was a result of his service in the Army and his becoming addicted there.

I want to put it on the record that we'll seek psychiatric (help) for Steve with the officials at the Department of Corrections." (Emphasis and parenthesis supplied)

At the conclusion of this hearing, the following order was entered:

"Hearing to determine whether or not defendant's probation should be revoked was held. Witnesses called, sworn and testified. Upon evidence adduced Court finds that the defendant is in violation of the conditions of the probation previously granted and same is hereby revoked and defendant remanded to the custody of the Sheriff to be transported to the Department of Corrections at Jefferson City to commence serving the three-year sentences heretofore imposed on December 7, 1971.

SO ORDERED:"

The record in this proceeding must be taken as it is received and it is apparent that some of the assertions in petitioner's brief are not supported by that record. It is clear for example, that petitioner never formally nor orally "requested a psychiatric examination to determine" the defendant's competency "to understand the proceedings against him, ability to assist in his own defense, and whether or not he could appreciate the alleged wrongfulness of his conduct in October and November, 1973." Neither was any record made as to "Reiter's condition that day" nor was the testimony of "Reiter's mother, Ruth Reiter, and his sister, Pat Wilkins, concerning their opinion of his drug addiction" offered. Most, if not all, of the Probation and Parole officer, Stafford's, testimony was hearsay, and he was not questioned as to his opinion concerning the relationship of the alleged addiction to the violations nor as to his recommendation concerning revocation of probation.

Neither, so far as this record discloses, was any request for a psychiatric examination denied by the court, because no such request was made. Further, the record does not contain any ruling or order that the alleged drug addiction evidence could not be offered.

■ The court cannot be charged with error upon the basis of refusal to grant requests when such were never made, nor for excluding evidence that was never proffered.

As the petitioner's assertions on this point are understood, he claims that because of an alleged drug addiction, he was incapacitated from either assisting his counsel or presenting his case at the revocation hearing, and thus was deprived of his constitutional right to due process and a fair "trial". Aside from the cases hereinafter discussed with reference to petitioner's second point, he relies upon the case of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 864, 15 L.Ed.2d 815 (1966), which was a *habeas corpus* proceeding arising from a murder conviction and resulting life sentence. Robinson claimed that he was not accorded his constitutional right to a fair trial because he was *insane* and was not given an opportunity to obtain expert psychiatric testimony nor afforded a hearing as to his sanity before trial. The Supreme Court upheld his contention, stating that the evidence introduced as to Robinson's mental condition during the criminal

trial clearly entitled him to a hearing on his competency to stand trial and the trial court's failure to make such inquiry deprived him of his constitutional rights. The *Pate* case is not in point here.

*Pate* involved a criminal prosecution and it is clearly the law that proceedings for the revocation of a parole (or probation) are not a part of a criminal prosecution and "thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 [7] (1972). But even more persuasive is the fact that no claim was made that Reiter was *insane*. The nebulous claim was that he was a drug addict. The Circuit Court tacitly recognized this fact and Reiter's need for "attention to this situation" as revealed in the above-quoted colloquy. Even had this hearing been a criminal proceeding, the suspension of such proceeding because of "mental disease or defect" would not have been justified on this record. Section 552.020(1) RSMo 1969, V.A.M.S.

By statutory definition, mental diseases or disorders justifying examination and separate inquiry "do not include * * * drug abuse *without psychosis*". Section 552.010 RSMo 1969, V.A.M.S. By what is here stated is not meant that proper lay or medical testimony of drug addiction should, *ipso facto*, be excluded for all purposes where such fact might bear upon mitigation or constitute extenuating circumstances. As was said in Morrissey v. Brewer, supra, 408 U.S. 471, at l.c. 488, 92 S.Ct. at 2603:

"* * * The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. * * *"

No abuse of discretion appearing from this record as to petitioner's first point, the same is ruled against him.

The remaining question for decision is whether or not the petitioner was afforded due process in connection with the revocation of his probation, in the light of the present-day concept of such proceedings. That a substantial measure of due process (or as Chief Justice Burger characterized it in *Morrissey*, "process due") must be accorded a probationer in such proceedings is no longer open to legitimate dispute. However, since the revocation proceedings are not part of a criminal prosecution, the "full panoply" of due process rights need not be accorded a probationer. Morrissey v. Brewer, supra. On the other hand, since a revocation of probation represents a "grievous loss" and deprivation of liberty, substantial procedural safeguards must be measured by those protections vouchsafed by the Fourteenth Amendment.

In the case of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court of the United States stated that, while it was not undertaking to write a code of procedure with reference to proceedings involving the revocation of parole, it would offer the following as "guidelines" to insure *minimum* requirements of due process, 408 U.S. 471, 489 [22, 23], 92 S.Ct. 2604:

"* * * They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It

is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

\* \* \* \* \* \*

\* \* \* The few basic requirements set out above, which are applicable to future revocations of parole, should not impose a great burden on any State's parole system."

In the case of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court of the United States reaffirmed the holding in *Morrissey* and held that the principles of "process due" there announced applied with equal force to a proceeding to revoke probation, the character of the proceeding here. Both *Morrissey* and *Gagnon* had been written before any revocation proceedings were commenced in this case and the mandate of those opinions governed such proceedings in the trial court.

■■■ Gauged by these "minimum requirements", it is obvious from the record that petitioner was not given written notice of the claimed violations of his probation. The order of November 1, 1973, a copy of which was apparently sent to petitioner's counsel, simply stated that petitioner "has failed to obey the laws of the State and has failed to report all arrests without delay to his Probation and Parole Officer". Such statement is completely lacking in the specificity obviously required by *Morrissey* and *Gagnon.*

No disclosure to the petitioner was made of "the evidence against him"; he was not realistically "afforded an opportunity to present witnesses and documentary evidence" or to "confront and cross-examine adverse witnesses" because he was not apprised of the specific charges until the actual revocation hearing. Neither did the court make "a written statement" as to "the evidence relied on or the reasons for revoking parole". All of these omissions in the record fall squarely within the minimum requirements of *Morrissey* and *Gagnon* and the lack of compliance demonstrates the failure to afford petitioner due process. An identical view of the application of *Morrissey* and *Gagnon* in revocation of probation proceedings has been recently declared by the St. Louis District of this court in two very comprehensive and well-reasoned opinions in Ex parte Moore v. Stamps, 507 S.W.2d 939 (Mo.App.1974) and Brandt v. Percich, 507 S.W.2d 951 (Mo.App.1974), which were cases of first impression in this state.

One further subject on this point merits discussion. In the *Morrissey* and *Gagnon* cases, the action and procedures of *administrative agencies* were involved; in *Morrissey,* the Iowa Parole Board, and in *Gagnon,* the Wisconsin Department of Public Welfare. In both *Moore* and *Brandt,* and in the case at bar, the proceedings involved revocation of *judicial* probations.[1] In both *Morrissey* and *Gagnon* the court held that due process requirements could only be satisfied if a preliminary hearing following arrest was held to determine "probable cause or reasonable ground" to believe that the parolee or probationer had committed acts constituting a violation of his parole or probation, and that such preliminary hearing be conducted by a person uninvolved in any prior facet of the case.

Under the applicable Missouri statutes relating to judicial probation, the St. Louis District in *Moore* and *Brandt* set forth with particularity the various steps toward revocation necessary to comply with the due process requirements of *Morrissey* and *Gagnon,* and such views are adopted by this District.

■■■ No purpose would be served to repeat here the present requirements in Missouri in such proceedings as set forth in *Moore* and *Brandt* except to say that in the facts of the particular case at bar, no

1. Sections 549.058–549.197 RSMo 1969, V.A.M.S.

necessity appears to conduct a preliminary or "show cause" hearing, and the Circuit Court that granted the probation of petitioner is qualified to conduct a final hearing in strict conformity with the guidelines as set forth above from *Morrissey* in order to make both "the factual determination and the value-judgment determination."

The opinions in *Moore* and *Brandt* are herewith adopted and followed as the present law in Missouri with reference to future revocation proceedings. The petitioner's second point is ruled in his favor.

The petitioner is, therefore, discharged from his present confinement and restored to his status as a probationer, without prejudice to the institution of revocation proceedings in accordance with the principles and procedures set forth herein.

All concur.