537 S.W.2d 183 (1976)
In the Matter of W___ K___ M___, a minor under the age of 14 years.
L___ W___ H___, Petitioner,
v.
W___ E___ M___, Respondent.
No. KCD 28237.
Missouri Court of Appeals, Kansas City District.
May 3, 1976.
*184 James S. Formby, Kansas City, for petitioner.
Thomas E. Allen, Liberty (Hale, Kincaid, Waters & Allen, Liberty, of counsel), for respondent.
Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.
SWOFFORD, Judge.
This proceeding was instituted in this court on September 4, 1975, by the filing of a petition for habeas corpus by the natural mother of W___ K___ M___, a male, then twelve (12) years of age, who she alleged was presently in the physical custody of his natural father and who was being illegally restrained from returning to the mother under the terms of certain contractual obligations between the mother and father; that the father and mother were not (and had never been) married to each other; and, that the father for numerous stated reasons was unfit to have custody of the child. The parents and the child all are residents of Clay County, Missouri.
On September 5, 1975, this court, deeming the allegations of the mother's petition sufficient for further inquiry, issued its writ and ordered the father to produce the body of the child before this court on September 8, 1975. On that day, the father did appear, produced the child, and filed his Return to the Writ of Habeas Corpus and his Motion to Dismiss, in which he admitted that the child was in his physical custody; asserted that the right of custody of the child had never been the subject of any decree or order of any other court; that the contract, with the mother, placing the custody in her, was illegal, void and unenforceable; that he was a fit and proper person to have permanent custody of the child and was its natural father and thus had legal rights to custody equal to its natural mother; that the child wished to remain in the father's custody; that the child's interests and welfare were best served by an award of permanent custody to the father; that the mother, for numerous factual reasons alleged, was unfit to have custody of the child; and, prayed this court to award him custody of his son.
On that same date, this court, sitting en banc, heard from counsel, viewed the child and its natural parents, and determined that there were obviously factual issues of complex character. Accordingly, this court entered its order on September 8, 1975, awarding temporary custody of the child to the mother-petitioner, and appointing the Honorable R. Kenneth Elliott, Judge of the Circuit Court and Juvenile Judge of Clay County, Missouri, as Special Master under Rule 68.03, Rules of Civil Procedure, which order states, in part:

*185 "ORDER
Said W___ K___ M___, having been this day produced to this court in obedience to the writ of habeas corpus issued herein, and return having been filed, it is
ORDERED, that the temporary custody of W___ K___ M___ be remanded to petitioner, L___ W___ H___, pending the determination of the legal issues herein, as hereinafter ordered and directed, and that petitioner shall not remove said W___ K___ M___ from the State of Missouri, pending said determination, and
IT IS FURTHER ORDERED, that the Honorable R. Kenneth Elliott, Judge of the Juvenile Court of Clay County, Missouri, at Liberty, be and he is hereby appointed as special master herein pursuant to Rule 68.03, with directions to hold an evidentiary hearing on the issues herein and to make findings of fact and conclusions of law and report the same to this court, together with costs, including the preparation of a transcript of the proceedings.
Dated this 8th day of September, 1975.
 /S/ Jack P. Pritchard
 Jack P. Pritchard, Chief Judge"
On September 8, 1975, this court also appointed the Honorable Jerome E. Brant, a member of the Clay County Bar, as Guardian ad Litem for the minor, W___ K___ M___
On September 10, 1975, Special Master Elliott set an evidentiary hearing for September 17, 1975. On September 15, 1975, Jerome E. Brant filed his formal entry of appearance as Guardian ad Litem and requested that the Master require strict proof from the mother-petitioner. On that same day, September 15, 1975, the mother-petitioner filed her Reply to the father's Return, in which she admitted all of the basic facts above mentioned, but again asserted in numerous areas the father's unfitness to have permanent custody of the boy, and with equal vigor asserts her fitness and ability to have permanent custody. The issues thus drawn ultimately resolve to the basic fact as to what will best serve the interests of the child and the determination of this required a searching and careful exploration into and meticulous sifting of a multitude of evidence. Accordingly, Special Master, Judge Elliott, conducted an evidentiary hearing on September 17, 1975, in a most thorough and able manner, and caused to be made a complete transcript of the evidence, which, together with his "Report of Special Master" and various exhibits, were filed with this court on October 14, 1975. In his report, which will be set forth in more detail herein, the Special Master found that the care and custody of W___ K___ M___ should be placed in the natural father, with reasonable visitation rights to the mother. On December 18, 1975, the Guardian ad Litem filed his report with this court, in which he made the same recommendations as to custody. The case was argued before this court on January 26, 1976 and taken under submission.
Some preliminary statements as to the jurisdictional and procedural elements of this matter are appropriate. This court has absolute original jurisdiction in this habeas corpus proceeding, Article 5, Section 4(1) Constitution of Missouri; Ex Parte Hagan, 295 Mo. 435, 245 S.W. 336, 337[1] (banc 1922); Reiter v. Camp, 518 S.W.2d 82, 83-84[1] (Mo.App.1974). This jurisdiction carries with it the concomitant power and obligation to determine the respective rights as between the natural parents of W___ K___ M___ under the issues and evidence now reviewed. Rule 91.60, Rules of Civil Procedure; Ex Parte Lofts, 222 S.W.2d 101, 104-106 [1, 2] (Mo.App.1949). However, as in all such proceedings, the welfare of the child is and must be the prime and overriding consideration and the rights and claims of the parents are and must be of secondary importance. E.W. v. K.D.M., et al., 490 S.W.2d 64, 67[5, 6] (Mo. banc 1973); Stockton v. Guthary, 415 S.W.2d 308, 311[1, 4] (Mo.App.1967). Neither is this court bound by an extrajudicial agreement between the parents, such as the "Property Settlement Agreement" here involved, purporting to give absolute permanent custody of W___ K___ M___ to the natural mother. Ex Parte McCarter, 434 S.W.2d 14 (Mo.App. *186 1968). Custody of infants cannot be bartered and traded as goods in the marketplace, so as to foreclose a judicial determination as to the present welfare and best interests of the child.
While little procedural or practical problems would be encountered in habeas corpus proceedings of this nature brought at the trial court level, such difficulties are, of course, immediately apparent at the appellate court level. Courts, such as this, before September 1, 1972, had no physical, financial or practical means to accomplish the necessary development of the facts and evidence required to determine the area of the best welfare of the minor nor the respective rights of the parents in a case such as the one at bar.
However, the Supreme Court of Missouri wisely corrected this schism and filled this gap by adopting Rule 68.03, Rules of Civil Procedure, on February 1, 1972, to be effective September 1, 1972, providing for "Masters in Appellate Courts". It is under Rule 68.03 that the court and Special Master Elliott proceeded in this case. By this means, a full evidentiary hearing was had, the parties were given full opportunity to be heard; to be represented by counsel therein; to present witnesses and offer documentary evidence; and, to cross-examine adverse parties and witnesses. All of the relevant issues of fact were thus fully presented and preserved by a full transcript filed here with the findings of fact of the Special Master.
So far as counsels' briefs and independent research disclose this is the first case in an appellate court of this state involving the procedures authorized and delineated by Rule 68.03. At the very threshold of decision the effect of and the weight to be given to the Special Master's findings and recommendations must be determined.
Rule 68.03 was, in general, modeled after Rule 53 of the Federal Rules of Civil Procedure providing for the appointment of masters in the United States District Courts, which rule, so far as the scope of review is concerned, has been held by federal decisional law to also apply to federal appellate courts. Michelsen v. Penney, 135 F.2d 409, 414[1] (C.C.A.2-1943); National Labor Relations Board v. Remington Rand, Inc., 130 F.2d 919, 925[1] (C.C.A.2-1942). Rule 53(e)(2) provides that in non-jury matters, the Special Master's findings of fact shall be accepted "unless clearly erroneous" by the district (or appellate) courts. As a result, an impressive body of federal decisional law has developed wherein the courts, while properly refusing to abdicate any judicial functions upon receiving a master's report, have applied the "clearly erroneous" test so as to adopt such report, unless a review of the evidence and law results in a firm and definite conviction that the master is wrong or that "a mistake has been made". O'Rieley v. Endicott-Johnson Corporation, 297 F.2d 1, 5[2] (C.C.A.8-1961); Locklin v. Day-Glo Color Corporation, 429 F.2d 873, 876 [1, 2] (C.C.A.7-1970); Flour Corporation v. Illinois Power Company, 326 F.2d 374, 381[1] (C.C.A.7-1964); Hilliard v. Hollins, 290 F.2d 263, 265[2, 3, 4] (C.C.A.6-1961); National Labor Relations Board v. Remington Rand, Inc., supra, at l.c. 925[1].
Our Rule 68.03 does not contain such a "clearly erroneous" provision. However, it is obvious that a proceeding thereunder resulting in a Special Master's Report, findings of fact, conclusions of law and recommendations, in order to give any real meaning to the Rule, should logically be accorded the weight and deference which would be given to a court-tried case by a reviewing court. Both the law and the evidence should be reviewed as in suits of an equitable nature with regard given to the opportunity of the Special Master to have viewed and judged the credibility of witnesses.
The transcript of the testimony and the various exhibits have been carefully reviewed and analyzed, in the light of Special Master Elliott's report, and his findings of fact, conclusions and recommendations are fully supported by substantial and credible evidence, and were proper. His findings of fact, with minor changes to protect the parties and for clarity, without quotations, are therefore adopted here:
*187 The natural mother, L___ W___ H___, the petitioner in this court, was never married to respondent, the natural father of W___ K___ M___, the child in question; but the two parents "lived together" for about three years, this relationship terminating in a formal separation capped by the execution of a document admitted in evidence as Exhibit 8. This formal document was entitled "Property Settlement Agreement" and was dated September 29, 1966, and was drawn by an attorney in Independence, Missouri, and provided that the subject child, W___ K___ M___, "will be in the personal custody and control of L___ W___ R___ R___," (L___ W___ H___ here) along with a provision for the payment of $60.00 per month for child support. Other provisions contained in said agreement were not relevant or material to this hearing.
The natural mother, L___ W___, is a woman of 35 years of age, and may be described as diminutive. After dropping out of school in the 10th grade, she was married at the age of 17 to one R___, whom she divorced about five years later. Two girls, T___ and M___, were born of this marriage, and the petitioner presently has custody of these girls, presently of the ages of 16 and 14. After the three-year stint with the respondent, petitioner again married one P___ in 1966 and was divorced therefrom in 1968, with no children resulting.
Petitioner then married one Danny Little Bear in 1969, and divorced him the following year, in 1970, in Jackson County, Missouri. Danny Little Bear is a professional wrestler by trade. Petitioner then married J____ H___, who gave her her present name, in 1972, and petitioner testified she is going to divorce Mr. H___, who is presently incarcerated in the penitentiary at Lansing, Kansas. Mrs. H___ presently lives in the T___ apartment complex in Gladstone, Missouri, and she testified her rent was $255.00 per month, which included her utilities. She receives about $300 a month income from Social Security, Aid to Dependent Children, food stamps, and child support from the respondent. The report of the social investigation by the deputy juvenile officer Martin indicated the apartment was beautifully decorated, with lovely furniture and appointments.
The respondent came to this area from Maysville, Missouri. He is a handsome, wavy-haired man, * * *. He is rather soft spoken, and he and his present wife, B___, operate a store in Liberty, Missouri, named "Party Place Liquor". He resides also in the City of Gladstone, and in the same high school territory as petitioner. In other words, the school district lines for the particular school to be attended are the same for the petitioner as for respondent, in relation to their residence addresses. Respondent lives in a $65,000 single-family residence with a heated swimming pool in the rear. Respondent has been married to B___ M___ since 1967 and they have no children born of this marriage, except that B___ has a child from a former marriage living with them, a girl, age 15, and the respondent has a child from a former marriage named T___ L___, who lives in respondent's home, who is 17 and a senior in high school.
Pursuant to the order of the Special Master, Marilyn Martin, a deputy juvenile officer of the Clay County Juvenile Justice Department, prepared a report of her investigation dated September 16, 1975, and appeared as a witness, along with Mrs. Helen Frye, the Juvenile Officer of Clay County, Missouri, who testified regarding contact of the Clay County Juvenile Department with these families.
The evidence in this case demonstrates that petitioner has experienced an unsettled and varied life, engaging in several marriages, interspersed with liaisons. In 1971, she married a man by the name of M___, also known as S___, in New Orleans, which marriage was annulled according to petitioner. In addition, when K___ (W___ K___ M___) was about five years old, she spent some time in Hawaii in association with a man named S___, during which period K___ (W___ K___ M___) lived with his father for about a year.
*188 Respondent has faithfully made the support payments as specified in Exhibit 8, and since his present marriage to B___ in 1967, has established a relatively stable home, taking into consideration the problems of B___'s children by a former marriage.
Both petitioner and respondent profess their love and concern for K___ (W___ K___ M___), and an examination of K___ (W___ K___ M___) in chambers with counsel present disclosed that K___ (W___ K___ M___) desires to live with his father. In determining this question, your Master has kept in mind the provisions of Section 452.375 RSMo 1969, Laws 1973, which is the latest guidance by the Legislature on factors to be used in determining the custody of a child. K___ (W___ K___ M___) testified about his mother taking him to the penitentiary to visit her present husband, H___, and also to incidents regarding his mother's use of a gun and the fact that his mother occasionally erupts and likes to break things. The fact that K___ (W___ K___ M___) sleeps with his 14-year-old sister is an arrangement which will cause increasing problems as K___ (W___ K___ M___) gets older; and the arrangement at the father's house is much better for K___ (W___ K___ M___). K___ (K___ W___ M___) seems to enjoy the opportunity to visit with his paternal grandparents in Maysville, and the relationship of K___ (W___ K___ M___) with his father and stepmother seems to be somewhat better adjusted than with his mother and two half-sisters. His mother is continuing to see various men, and her health is such that the problems of a rapidly developing 12-year-old boy, along with the two girls which she has, indicate that it would be to the best interest of K___ (W___ K___ M___) to live with his father. The adjustment would be minimal, as he would attend the same junior high school and this arrangement would afford K___ (W___ K___ M___) the influence and fatherly guidance that he is going to need in the next few years of maturation. The mother testified she was completely disabled and was drawing disability from her Social Security, and according to the evidence, she is not quite making ends meet, especially with the burden of K___ (W___ K___ M___).
It is therefore the decree and mandate of this court that the care and custody of W___ K___ M___, the minor male, natural son of the petitioner L___ W___ H___ and the respondent W___ E___ M___, be and is hereby placed with the father, W___ E___ M___, under our writ herein, and that the physical custody of said minor be immediately and forthwith transferred to the natural father, W___ E___ M___, with all and sundry concomitant legal rights and obligations flowing to the father and to the son, consistent with such relationship as legal father and son.
It appears to the court that Special Master Elliott has incurred expenses incident to this court's appointment and his necessary functions thereunder. This court finds that such expenses are properly chargeable to such party hereto as may be directed. Rule 68.03(a). It is therefore ordered that the respondent, W___ E___ M___, forthwith pay the following sums to the following persons, as allowances for the necessary costs and expenses of the Special Master:

 To - Calvin W. Hawkins, Certified Court
 Reporter, Liberty, Missouri -
 Cost of Transcript $297.70
 To - Jerome E. Brant, Guardian ad Litem,
 Liberty, Missouri $800.00

and W___ E___ M___ is further ordered to file with the Clerk of this Court appropriate receipts evidencing the payment of these expenses.
All concur.