**Fredalyn T. (Simmons) GENTRY,**
**Petitioner–Respondent,**

v.

**William E. SIMMONS,**
**Respondent–Appellant.**

**No. WD 39823.**

Missouri Court of Appeals,
Western District.

July 5, 1988.

William E. Simmons, Clinton, pro se.

Linda F. Dycus, Kansas City, for petitioner-respondent.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

CLARK, Judge.

In this dissolution of marriage action, William Simmons moved to modify the 1982 decree in respect to custody of his fifteen year old daughter. The girl's custody had been granted in the decree to the mother, Fredalyn. The motion alleged changes in circumstances since entry of the decree and the desire of the girl to live with her father. The trial court denied the motion, entered a judgment of civil contempt against the father and awarded the mother judgment against the father for $2500.00 in attorney fees and a fee of $1000.00 to the guardian ad litem. The father appeals. We reverse the judgment.

This case has a voluminous record history. Some sixty motions have been filed since the decree was entered, the majority of which were filed by the mother raising complaints about custody of and visitation with the children. Three children were born of the marriage, twins, Jim and Jamie born in 1972, and John, born in 1977. The original decree awarded custody to the mother. In 1983, custody of Jim was transferred to the father by agreement of the parties, confirmed by court order. By the current motion, the father sought custody of the twin, Jamie.

The principal point of the father's appeal contends that the trial judge erred in failing to modify the custody provision with respect to Jamie in that (1) the court erroneously found no change in circumstances to have been proved, and (2) the court erroneously rejected and gave no weight to the testimony of Jamie regarding her preference as to custody.

Modification of a prior decree of custody depends, in the first instance, on proof of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, showing that a change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interests of the child. Section 452.410, RSMo 1986; *Brand v. Brand*, 534 S.W.2d 628, 632 (Mo.App.1976). Whether such facts are proved involves deference to the trial court under the familiar proposition that the trial court's decision must be affirmed unless there is no substantial evidence to support it, it erroneously declares or applies the law or it is against the weight of the evidence. As to the latter condition, the appellate court should reverse the judgment only upon a firm belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Marriage of R.R. and R.R.*, 575 S.W.2d 766, 768 (Mo.App.1978).

In the subject case, the evidence tendered to prove changed circumstances since entry of the decree awarding Jamie's custody was essentially undisputed. We therefore refrain from restating all of the supporting facts and, in the interests of curtailing the length of this opinion, recount only a summary of the considerable evidence produced.

Following entry of the dissolution decree, each of the parties remarried, the husband to Doris and the wife to Tom Gentry. A child was born to the husband and Doris in 1986. Visitation between Jamie and the husband, both scheduled and unscheduled,

was a source of irritation and controversy which became progressively more exacerbated commencing in 1986. The wife expressed it as her view that Jamie should have no contact at all with her father.

Jamie was active in attempting to maintain contact and a relationship with her father and this was a source of friction in the Gentry household. On occasion, when the husband was scheduled for a period of visitation, the wife would take Jamie and John and leave her house to frustrate the visitation. Conversations between the Gentrys in Jamie's presence were derogatory and critical of the husband. Frequently, when Jamie was having a telephone conversation with her father or her brother Jim, the wife would monitor the call by listening on an extension or would force Jamie to terminate the call. The wife also kept a log of such calls noting who called and when. The wife and Tom expressed their bitterness and animosity toward the husband and degraded him in Jamie's presence.

Over the months in 1986 and 1987, the relationship between Jamie and her mother continued to deteriorate. Jamie did not develop any close association or affection for her stepfather and, because of his use of force to restrain Jamie from her attempts to be with her father and brother, she came to fear him. Jamie stayed in her room most of the time and other witnesses testified that Jamie acted "cold" toward her mother and stepfather. A psychologist, who testified on behalf of the mother, stated that if other arrangements for custody of Jamie were not made, her reactive response could range from anger or a mild transient depression to suicide.

In contrast to the relationship between Jamie and her mother, the child's affection for her father and for her twin brother has remained strong despite the enforced separation and the continual criticism by the mother. Jamie also expressed a fondness for her stepmother, Doris, who she said was like a "best friend," and for the new baby in that household.

After four days of testimony appearing in more than five hundred pages of transcript, the general tenor of which is summarized above, the trial court ruled that the father had produced no evidence to show the mother unsuitable to have custody of Jamie and also ruled that the evidence failed to prove a change in circumstances dictating a change in custody. No mention was made of any findings as to the best interests of Jamie, but the court did note that it was giving no weight to the testimony of Jamie on the subject. These findings were erroneous as contrary to the overwhelming weight of the evidence and incorrect as a matter of law.

■ From the details of the evidence already recounted in this opinion, it is readily apparent that Jamie's relationship with her mother and stepfather was shown to have steadily worsened. Irrespective of whether the court believed the evidence of the mother or of the father as to the source of problems associated with visitation schedules, it was not disputed that Jamie evidenced a coldness toward her mother, a fear of her stepfather,[1] and a determination not to live in the Gentry household. This estrangement between Jamie and her mother, in direct consequence of the hostility by the mother toward the father, was a gradual development which occurred subsequent to the previous custody order and was a change in circumstances to be taken into account in determining what custody arrangements would be in Jamie's best interest. This circumstance where the relationship between the child and the custodial parent has deteriorated and where, as here, the child has left the custodial home on her own accord, is sufficient to support a finding that modification of the decree should be ordered. *Morrison v. Morrison*, 676 S.W.2d 279, 281 (Mo.App.1984); *Dutton v.*

---

1. The trial court struck on grounds of relevancy the testimony by Tom Gentry's son of a former marriage to the effect that Gentry had beaten him as a child so severely as to leave permanent scars. The weight of this evidence was potentially diminished because the event occurred nine years earlier, but the evidence was relevant to Jamie's fears and it was improperly excluded as irrelevant.

*Dutton,* 668 S.W.2d 585, 589 (Mo.App. 1984).

■ The evidence, including the mother and stepfather's own testimony, indicated that they held the father in low regard, degraded him in Jamie's presence, depicted him as an evil person with whom Jamie should have no contact and engaged in persistent efforts to destroy Jamie's natural affection for her father. The mother expressed it as her preference that Jamie have nothing to do with her father, a directive which Jamie continually resisted. This state of facts showing an attempt by one parent to alienate a child from the other parent is a changed condition and can form the basis for a modification of custody, *Eatherton v. Eatherton,* 725 S.W.2d 125, 128 (Mo.App.1987). When a parent who has custody makes disrespectful and abusive statements against the other parent and attempts to wean the children away, the decree can properly be modified and the custody changed. *Garrett v. Garrett,* 464 S.W.2d 740, 743 (Mo.App.1971).

■ All of the facts described above, the deteriorating relationship between Jamie and her mother, the efforts by the mother to sever connections between Jamie and her father and to portray the father as an undesirable individual and Jamie's own determination not to continue living in her mother's home undeniably establish that conditions at the date the motion was heard had changed from those which prevailed some four years earlier. The trial court erred when it ruled to the contrary.

On this record, the only question for judicial decision was whether the best interests of Jamie would be served under the changed conditions by continuing the prior custody in the mother or granting the change of custody to the father. There was no issue in the case, as the trial court apparently perceived it, as to whether the mother had been proved an unsuitable person to have custody. The ultimate and sole test is what will be in the best interests of the child. *Knoblauch v. Jones,* 613 S.W.2d 161, 165 (Mo.App.1981).

Factors to be considered in determining the best interests of the child include (1) the wishes of the parents; (2) the wishes of the child; (3) the interaction of the child with his parents, siblings and other persons who may significantly affect the child; (4) the child's adjustment to home, school and community; (5) the mental and physical health of those involved, and (6) the needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child. Section 452.375.2, RSMo 1986; *M– D– v. C– D–,* 691 S.W.2d 406, 408 (Mo.App.1985). The preference of a child as to custody should be followed only if the welfare and interest of the child as determined by all the evidence, are consistent with that preference. *Kanady v. Kanady,* 527 S.W.2d 704, 707 (Mo.App. 1975). The custody change should benefit the child in a substantial way. *Schmidt v. Schmidt,* 591 S.W.2d 260, 262 (Mo.App. 1979). The undisputed fact that a child wants to live with a certain parent is not a sufficient basis for the award of custody to that parent and a child's custody should not be allowed to turn upon the temporary whims or desires of the child. *In re Marriage of Newberry,* 745 S.W.2d 796, 798 (Mo.App.1988). On the other hand, if the child involved is of sufficient age to form and express an intelligent preference as to which parent should be awarded custody, he should be permitted to do so and the court should consider such statement of preference along with all the other facts and circumstances before it. *Kanady,* 527 S.W.2d at 707; *Smith v. Smith,* 435 S.W.2d 684, 687 (Mo.App.1968). The weight to be given the child's preference varies with the age of the child and the basis for the preference given. *Gambino v. Gambino,* 636 S.W.2d 81, 82 (Mo.App.1982). As a child grows older, her desires may be accorded more weight, *Schmidt v. Schmidt,* 591 S.W.2d at 263, depending on her maturity of mind and capacity to judge. *J. v. E.,* 417 S.W.2d 199, 204 (Mo.App.1967).

Jamie, a girl all the witnesses described as exceptionally intelligent, talented and socially skilled, was interviewed extensively in chambers. She stated her unequivo-

cal preference to be in favor of living with her father. The reasons for this choice, which she stated was emotionally difficult, were that she wanted to spend her remaining high school years with her twin brother, she wanted to escape from the criticism of her father and his family to which she was subjected in the Gentry home, she did not have an acceptable relationship with her mother in that home and she was fearful of her stepfather and his hostility.

The trial court erred when it gave no weight at all to Jamie's statement of her preference in the custody determination. The record demonstrates the capacity of Jamie to make a mature decision and, while her choice could not be determinative, it was an important factor to be considered and was entitled to significant weight. Each of the reasons she expressed for her decision has been recognized in the cases as a valid ground for a custody change. Moreover, as the court observed in *J. v. E.*, 417 S.W.2d at 204, it is necessary to take account of circumstances where the child has reached an age where he will soon make his own choice as to the parent with whom he will live.

■ After considering all of the evidence in the record, we have a firm belief that the trial court erred in not ordering a change of Jamie's custody from petitioner mother to respondent-appellant father and a similar belief that such a custody change will be in Jamie's best interest. We are not unmindful that the guardian ad litem recommended otherwise, but that course was tempered by recognition of the prospect that Jamie would probably not abide by an order continuing the present custody. In addition, the guardian's recommendation was subject to the condition that the mother and father deal with each other directly in matters affecting Jamie and her association with her father and brother. Experience under the present custody order and the mother's resistance to dealing with the father at all effectively nullify the viability of the guardian's approach.

In sum, we conclude, as to the father's first point on appeal, that the trial court erred in finding no changed circumstances warranting re-examination of the custody order and that the court also erred in giving no weight to Jamie's expression of preference on the subject of custody. Based on all the evidence, we believe the best interests of Jamie require modification of the decree to provide that Jamie's custody be placed with her father.

In another point, the father asserts that the trial court erred in rendering a judgment of civil contempt against him and in ordering him committed to jail. This matter was fully explored in an action for habeas corpus, *Simmons v. Megerman*, 742 S.W.2d 202 (Mo.App.1987), which resulted in a direction that the father be discharged. There was, of course, no mandate resulting from that action which directed entry of any judgment by the trial court in the present case. In conformity with the result reached in the habeas corpus action, however, the outstanding civil contempt judgment should be set aside.

Finally, the father asserts that the court erred in entering a judgment against him for $2500.00 attorney fees because no evidence was presented to show the financial resources of the parties. For this and other reasons, the judgment was in error.

The mother's motion for allowance of fees did not seek recompense for services rendered in resisting the motion to change custody, but for past and future attorney's services associated with questions of visitation under previous orders and the alleged harassment of the mother by the father. To further complicate the question, the court's order allowing the fees explicitly stated that the fees were allowed as a punitive measure against the father because he "has intentionally and willfully interfered with the Petitioner's custodial rights."

■ The only evidence before the court as to the financial resources of the parties was the fact that the mother had a salary as a teacher estimated at $19,500.00 a year. There was no evidence of the father's income or the extent of his assets. There was also no reliable evidence of what attorney fees were attributable to the present matters before the court. One fee bill was

introduced in evidence, another was marked as an exhibit but was not offered and neither is a part of the record here. Various figures appearing on the fee bill were mentioned by the mother in her testimony, but the charges extended back an uncertain period of time to earlier proceedings in the case. In short, it cannot be ascertained from this record what relevant fees were incurred, much less whether the charges were reasonable and necessary.

Section 452.355, RSMo 1986, explicitly directs the court to consider the financial resources of the parties as among the relevant factors bearing on the allowance of attorney fees. It is not necessary to show that one spouse is unable to pay the fees, but in the absence of evidence as to the parties' financial resources, an award of attorney fees cannot be supported. *Kieffer v. Kieffer,* 590 S.W.2d 915, 918–19 (Mo. banc 1979); *Geary v. Geary,* 697 S.W.2d 318, 320–21 (Mo.App.1985). The absence of such proof in this case together with the lack of any competent showing as to what services were rendered in the change of custody phase of the case or why the present motion issues required the extensive utilization of the attorney's services relegate the allowance a product of sheer guesswork. The judgment therefore is not supportable under the evidence.

As was noted earlier, this controversy has unduly burdened the court with motions and hearings and should be resolved, at least as to the issues addressed in this opinion. In the interest of judicial economy, we therefore exercise our judicial prerogative to enter the judgment the trial court should have entered. Rule 84.14; *In re Marriage of P.I.M.,* 665 S.W.2d 670, 675 (Mo.App.1984).

The judgments dated July 27, 1987 and July 31, 1987 are reversed. The case is remanded with directions that the court enter the following judgment:

Respondent's motion for change of custody is sustained. The custody of Jamie Beth Simmons is ordered transferred from petitioner, Fredalyn Gentry, to respondent, William Simmons. The order for payment by respondent William Simmons of child support for Jamie Beth Simmons is terminated. Petitioner Fredalyn Gentry shall have visitation with Jamie Beth Simmons at the times provided for her visitation with James William Simmons as set out in the order of June 5, 1986, paragraph 10. Petitioner's motion for allowance of attorney fees is denied. The guardian ad litem is awarded a fee of $1000.00 payable $500.00 by petitioner and $500.00 by respondent.

Costs on appeal are assessed against respondent, Fredalyn Gentry.

All concur.