STATE ex rel. Scarlett Martina BUSCH
by Angela T. WHITSON, Relator,

v.

William K. BUSCH, Respondent.

No. 71141.

Supreme Court of Missouri,
En Banc.

Sept. 8, 1989.

Allan Stewart, Clayton and Michael J. McAvoy, Fenton, for relator.

David Wells, St. Louis, for respondent.

Gail Berkowitz, Kansas City, guardian ad litem.

RENDLEN, Judge.

Relator, the natural mother of Scarlett Martina Busch, on November 9, 1988, petitioned this Court for habeas corpus, alleging that, at a time when the minor child had visited her natural father, respondent herein, he had, "in the absence of a Court order determining rights of custody or visitation, unlawfully detained the minor child without good cause and with the intent to deprive the [relator] of her custody rights...." This Court granted the writ, and, after a hearing on November 10, found relator entitled to legal custody of Scarlett, but ordered a master appointed to conduct a hearing concerning allegations of relator's unfitness which had been raised by respondent. Pending the proceedings before the master and further order of this Court, relator and respondent were to share temporary custody jointly in accordance with an agreement they reached. On November 11, 1988, the Honorable Frank D. Connett, Jr., was appointed special master of this Court:

> to conduct a hearing on the issues joined, with full power and authority to issue subpoenas, compel production of books, papers, and documents and the attendance of witnesses; to hear and to determine all motions and objections in the same manner and to the same extent as this Court might in a trial before it; to arrange for the reporting and transcribing of the testimony; and to report the evidence taken, together with his findings of fact and conclusions of law on said issues and his recommendation to this Court.

At a hearing on December 29, 1988, the master, upon motion of the guardian ad litem and without objection from relator, entered an order indicating he would try the issues of paternity, custody, temporary custody, visitation, and child support, and on April 3 the master began a five-day evidentiary hearing. On May 9 the master filed his findings, conclusions and recommendation, in which he noted it had been established that respondent is Scarlett's natural father, found relator "absolutely unfit to be the custodian of this child," and recommended respondent be given sole physical and legal custody of Scarlett, with a schedule of visitation for relator, provided she complies with certain conditions. The master further recommended that respondent be ordered to pay relator $700.00 per month as child support, again subject to specified conditions, and that respondent pay relator's attorneys for fees and costs advanced as well as $30,335.91 to the guardian ad litem.

Relator has filed several exceptions to the master's report, while respondent challenges only the award of attorney fees. Having examined the extensive record in this case and considered the arguments, we find ourselves in agreement with the master's recommendations.

Initially we address relator's argument that the scope of the proceeding before the master exceeded that permitted in habeas corpus actions and extended beyond the master's commission and authority. Habeas corpus is "the conventional remedy" where there has been no prior adjudication of custody in any legal forum and a petitioner alleges a "legal natural right to custody and alleges that those

holding the children are doing so unlawfully." *W. v. M., W. & W.*, 490 S.W.2d 64, 67 (Mo. banc 1973). In such circumstances "[t]he issue of custody takes on added significance where ... one of the respondents is the natural father, albeit putative, and asserts facts, which if found to be true would lead to the conclusion that the petitioner is unfit to have the general custody of the children and the interests of the children would be substantially harmed by returning them to the petitioner." *Id.* In *Matter of W_K_M_*, 537 S.W.2d 183 (Mo. App.1976), the court of appeals considered the jurisdiction of appellate courts in a case very similar to that at bar[1], concluding it had "absolute jurisdiction in this habeas corpus proceeding" which "carries with it the concomitant power and obligation to determine the respective rights as between the natural parents of W_K_M_ under the issues and evidence ... reviewed." *Id.* at 185. The special master in that case, as here, made recommendations regarding custody and visitation, and the court of appeals issued orders consistent with those recommendations. It is obvious from even a cursory reading of those cases that determinations regarding custody, visitation, and support are not only within the scope of habeas corpus proceedings where the petitioner is alleged to be unfit, but may be necessary for resolving the basic issue of how to best serve the interests of the child, which is the "prime and overriding consideration" in such proceedings. *Matter of W_K_M_*, 537 S.W.2d at 185; *see also W. v. M., W., & W.*, 490 S.W.2d at 67.

Both parties refer to § 532.370, RSMo 1986, which provides:

> In all cases where it shall appear from the evidence in any proceedings in habeas corpus, instituted between husband and wife for the custody of their children under the age of fourteen years, that by reason of insanity, drunkenness, cruelty,

or other cause, the party against whom the complaint is brought is unfit to have the care and government of the child or children in controversy, it shall be lawful for the court hearing said cause to award the custody of the same to the complainant or other guardian, as shall be deemed best in the premises, *and to make such other orders touching the custody and control of such child or children as the court may deem proper....*

(Emphasis added.) While the statute refers to proceedings between husband and wife, it evinces the policy of placing primary importance on the child's welfare adopted in the previously mentioned cases and provides further support for the proposition that custody, visitation rights, and related issues may be considered in habeas proceedings where such proceedings are appropriate.

In arguing the scope of habeas corpus is limited to a determination of the fitness of the parties seeking custody, relator relies on *In re Cook*, 691 S.W.2d 243 (Mo. banc 1985). We find that case inapplicable here. In *Cook*, there was a valid decree of divorce, in which custody was awarded to the mother, and the father subsequently obtained custody after a purported modification of the original decree which the Court held invalid. Thus, *Cook* involved a situation where habeas corpus was "used to procure custody of a minor child where the award of custody by a court [was] illegal on the face of the record." *Id.* at 245. The Court went on to note that although "[t]here are situations where the best interest of the child and the fitness of the petitioner may be inquired into upon habeas corpus," the case before the Court was not one of them. *Id.* The Court also expressed concern that there not be interference with the authority of circuit courts "to determine custody of minor children in *dis-*

---

1. As in the case before us, the habeas proceeding in *Matter of W_K_M_*, 537 S.W.2d 183 (Mo. App.1976), was initiated by the natural mother who claimed the father, to whom she had never been married, was illegally restraining the minor child from returning to her custody. The father admitted the child was in his physical custody, asserted that the right of custody had

not been the subject of any order of any other court, and raised allegations concerning the mother's fitness as a custodian. After determining there were factual questions to be resolved, the court of appeals awarded temporary custody to the mother and appointed a special master to hold a hearing, make findings, and issue a recommendation.

*solution cases of which they have proper jurisdiction, and in which they have exercised that jurisdiction by making a custody award of record* (emphasis added)." *Id.* Here there is no dissolution proceeding and no custody award of record by a circuit court, and we find nothing in *Cook* to preclude consideration of the issues tried by the master.

██ We also reject relator's argument that the master exceeded the scope of his authority under this Court's orders. Our order, previously quoted, granted the master authority to hear and determine "all motions" as this Court might in a trial before it, and empowered the master to conduct a hearing "on the issues joined." The master granted the guardian ad litem's motion to expand the issues, and the issues of paternity, custody, and visitation were thereby joined with the issue of fitness. Furthermore, this Court denied relator's motion, filed January 4, 1989, in which she argued the proceedings should be limited to determining fitness and requested clarification of directions to the master, or, in the alternative, a stay of the proceedings before the master. Our denial of relator's motion should have removed any doubt as to the master's authority under our order to consider the issues joined. Relator's argument regarding the scope of the proceedings is rejected.

██ We now consider the master's findings, conclusions and recommendations, to which we accord the weight and deference given to trial courts in court-tried cases, in light of the master's opportunity to view and judge the credibility of witnesses. *Matter of W_K_M_,* 537 S.W.2d at 186. Because of the nature of these proceedings, we see little reason to recite here the voluminous evidence indicating the mother's unfitness as a custodial parent; suffice it to say that the master's recommendations regarding custody and visitation are amply supported by the record. Even the guardian ad litem, while recommending joint legal custody, agreed that respondent should be given sole physical custody of the child. While we, as did the master,

have given careful consideration to the guardian ad litem's argument that joint legal custody would help maintain the bonds between mother and daughter, we must concur with the master that:

> Relator's history of neglect of this child and her half-brother Ashly, her poor judgment, the fact that she was unconcerned and irresponsible concerning her children's welfare when her personal wishes and desires conflicted, her propensity for using drugs and associating with the drug culture and her history of having temporary relationships with numerous men militates against Relator being able to confer in and share in the decision making in any meaningful and responsible way.

We therefore order that respondent be granted the full and sole physical and legal custody of Scarlett Martina Busch; that respondent keep relator fully informed of the health and welfare of Scarlett at all times and provide her with access to all medical and school records concerning the child and access to all of the child's teachers and doctors; and that respondent consult with relator when she is available concerning matters affecting the welfare of this child. We further order that relator be permitted to have the child with her in accordance with the visitation schedule recommended by the master [2], provided that relator shall never permit the child to be in the presence of Gino Eadus and shall never allow anyone other than herself to administer physical discipline to the child while she is in her care. Respondent and relator may by agreement vary the visitation provisions of the master's report except for the prohibition against the child being in the presence of Gino Eadus. We further order that respondent pay to relator the sum of $700.00 per month for child support so long as and on the condition that relator shall reside within a 150 mile radius of the courthouse in Clayton, Missouri, and further that the home be adequate and safe for Scarlett to stay in overnight and that Gino

2. See appendix.

Eadus not be present at the time of the child's visits.

The master, while recommending that respondent pay fees to relator's attorneys, recognized precedent indicating that typically such fees may not be assessed in habeas proceedings. In *In re L.G.*, 502 S.W.2d 33, 36 (Mo.App.1973), the court of appeals observed that "[o]rdinarily, attorney's fees are recoverable only when specified by contract or statute, or as a measure of damages arising from collateral litigation involving the wrong party, or in certain situations where a court of equity finds the award necessary to balance benefits." The court declined to award attorney fees in that habeas proceeding, noting that such a proceeding is not one in equity, but is "merely characterized as 'one of an equitable nature.'" *Id.* (quoting *W. v. M., W., & W.*, 490 S.W.2d 64, 67 (Mo. banc 1973)). *See also B.M.P. v. G.H.P.*, 612 S.W.2d 843, 846 (Mo.App.1981). In *W. v. M., W., & W.*, 490 S.W.2d at 67, we declined to "convert habeas corpus to a suit in equity, and to then attribute to the converted case all of the rules pertaining to equity cases...." We note that relator not only chose this forum, but the lengthy procedural history of this case indicates her choice of forum was the result of "venue shopping." In this regard, her testimony was that after talking to her attorney she moved to California without any intent of living there, dismissed a paternity suit against Busch she had filed in St. Louis County, and filed a related action in California, which was later dismissed on the grounds of forum non conveniens. Nevertheless, consistent with amended Supreme Court Rule 91.01, effective January 1, 1983, we considered this child custody contest in habeas corpus. It is within the province of the Court in the limited scope of this particularized action to consider the allowance of attorney's fees to the relator. Accordingly, we approve the recommendation of the master and award fees to the relator's attorneys as follows:

Allen Stewart– the sum of $7775.35.

Mike McAvoy– the sum of $57,037.19.

We are not suggesting and this opinion is not to be construed as precedent for the allowance of attorney's fees in habeas corpus proceedings other than child custody cases and only then as the circumstances permit.

Relator's motion to proceed as a poor person is granted.

Costs are taxed jointly and severally to the parties.

HIGGINS, COVINGTON and BILLINGS, JJ., concur.

BLACKMAR, C.J., concurs in separate opinion.

WELLIVER, J., dissents in separate opinion.

ROBERTSON, J., dissents and concurs in Part I of dissenting opinion of WELLIVER, J.

APPENDIX I

The Master recommends that Respondent be granted the full and sole physical and legal custody of Scarlett Martina Busch; that Relator be permitted to have the child with her:

One evening every other Wednesday from the end of school, returning Scarlett to school the next day;

Alternating weekends from the end of school Friday to 8:30 p.m. on Saturday.

The evening of Relator's birthday from after school until 8:30 p.m.

Easter Day from 1:00 p.m. to 5:00 p.m.

All day on Mother's Day from 10:00 a.m. to 5:00 p.m.

Alternating Fourth of July from 12:00 p.m. (noon) to 11:30 p.m.

Alternating Labor Day Weekend from Friday at 6:00 p.m. to Monday at 6:00 p.m.

Christmas Eve from 9:00 p.m. until Christmas Day at 5:00 p.m.

Alternating Thanksgiving holidays from 10:00 a.m. on Thanksgiving Day until Saturday at 8:30 p.m.

Scarlett's birthday from 3:00 p.m. until 6:00 p.m.

Ten nonconsecutive two-day visits during June and July from 9:00 a.m. the first day until 5:00 p.m. the second day.

However, for purpose of family vacation, Respondent will be entitled to continuous custody of Scarlett:

The entire week of spring break; and

Two weeks during August.

This visitation arrangement may be altered by the written agreement of both parents.

The Relator is required to provide the following during allowed visits:

Timely transportation to and from Respondent's custody or school.

Appropriate meals.

Personal custodian care, i.e., Relator shall not leave the child with any custodian.

Church attendance during Sunday visitation.

For overnight visits to provide Scarlett her own room and bed.

BLACKMAR, Chief Justice, concurring.

I believe that the principal opinion reaches the correct result, but feel that further exposition is necessary as to why we assumed original jurisdiction, and the evidence supporting our award of custody.

Scarlett Martina Busch was born out of wedlock to Angela Whitson on June 1, 1983. Angela had been divorced from Robert Whitson in May of 1983. They had one son, Ashly. Respondent Busch admitted paternity and provided a condominium for Angela and her children, to which he had frequent resort over a period of several years, but he did not live with her and had no intention of permanence. He made regular payments to her until July of 1988. Angela moved to California in 1987, taking Ashly and Scarlett, without evident purpose of changing her domicile. She did not establish a durable place of abode and apparently did not seek regular employment. The parties engaged in litigation in Missouri and California which is sufficiently described in the other opinions.

In July of 1988, Busch made a quick trip to California, after people called to report that the children were having problems and needed attention. He took physical custody of both Scarlett and Ashly, bringing them back to Missouri. This was with the consent of Angela, who spoke of getting her life straightened out. She was having a stormy relationship with one Gino Eadus, who had abused her and the children. Busch refused to return the children to Angela when it appeared that she was still living with Gino and filed suit in St. Louis County Circuit Court seeking custody of Scarlett. We first entered the case when the circuit court referred Busch's custody action to the juvenile commissioner. We then issued our preliminary rule in prohibition.

Angela then sought habeas corpus in this Court, having unsuccessfully sought a writ in the Missouri Court of Appeals, Eastern District. We heard argument and concluded that Busch had no right to detain the child because his paternity had not been adjudicated. We decided that the writ should issue, but that, because of allegations that Angela was not a fit custodian of the child, the matter should be referred to a master for development of the facts. The parties agreed to a custody arrangement in lieu of foster care pending the master's hearing and report. We then appointed The Honorable Frank D. Connett, Jr. of St. Joseph, one of the state's longest serving and most respected circuit judges, as master.[1] It is important to emphasize that we took original jurisdiction at Angela's request. Her counsel did not challenge our jurisdiction until her case took an unfavorable turn.

I—Habeas Corpus Jurisdiction

I do not share Judge Welliver's view about our jurisdiction in habeas corpus. The great writ is a part of our constitutional jurisdiction, which cannot be limited by

1. Judge Connett's term expired December 31, 1988. He did not file for reelection, although he has not reached the mandatory retirement age. He continued on his assignment as master following retirement.

statute or rule. Mo. Const. art. V, § 4.1. *Section 532.370, RSMo 1986*, by referring to actions between husband and wife, does not limit our jurisdiction. The limit, rather, is found in our discretion and in our great reluctance to issue original remedial writs when parallel remedies are available. Habeas corpus is an appropriate procedure to determine the lawfulness of the custody of a child. Angela asked us to assume this jurisdiction. Once we accept the case it is entirely appropriate for us to hear and determine, for present purposes at least, all aspects of the controversy before us. This is in accord with established principles of judicial completeness.

Because we do not have very many cases of this kind, it may be helpful to borrow from statutes and rules governing similar proceedings in circuit court, and to give attention to the underlying philosophy, when there are questions which our rules do not explicitly answer. Custody actions regarding children born out of wedlock are of relatively recent origin. It used to be thought that the father of an illegitimate child had no custodial rights. Now the father's rights are constitutionally protected,[2] but no statutory procedure is provided. Here again we must borrow on our knowledge of procedure generally, in order to treat all parties with justice.

## II—The Master's Report

The principal opinion writes too broadly in the following statement:

> We now consider the master's findings, conclusions, and recommendations, to which we accord the weight and deference given to trial courts in court-tried cases.

This Court, not the master, is the adjudicator. The master is appointed to help us because we are not well equipped to hear testimony. Special deference is due only to credibility calls, because the master has the opportunity to view the witnesses. The responsibility and the discretion are ours alone. Our task is more difficult than in appealed cases because we are not reviewing the decision of another tribunal. We are wholly responsible for the conclusion. *In re Veach*, 287 S.W.2d 753, 755 (Mo. banc 1956); *In re Weiner*, 547 S.W.2d 459 (Mo. banc 1977).

The master's finding that Angela is "absolutely unfit" is amply supported by the transcript. The record shows far more than general promiscuity, which also seems to be a characteristic of the respondent. Much more damaging is the evidence that she is disposed to leave her children with others when it suits her convenience or pleasure, sometimes without food or money, that she is not careful about the people she leaves the children with, that she is not diligent about returning when she says she will, that, on occasion, the children were found without any attendant, and that her neglect of the children brought her into confrontation with the authorities. These facts were established by a number of witnesses who observed her and the children in repeated instances, both in Missouri and in California. She has also frequently used, and has dealt in, various illegal drugs, including cocaine, marijuana, and "crystal" (an amphetamine). She took to living with a man of unsavory habits and conduct who fathered still a third child of hers. She once departed for a time after he struck her, leaving the children with him. There is evidence that he abused the children and also that he left them alone before their mother returned. There is justifiable fear that the children will not receive proper care and supervision, and may be in danger, while in Angela's custody.

Angela's counsel's briefing does not dispute the matters just detailed. She argues, rather, that she "must have done something right" because Scarlett is happy and well adjusted. The record is not uncontradicted on this point. There is evidence that Scarlett has shown signs of tension and is upset, especially when left without supervision. It is simply a matter of fortune that

---

**2.** *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). *See also E.M.R. v. G.E.R.,* 431 S.W.2d 152 (Mo.1968).

she has not sustained physical harm while being left without an adequate caretaker.

I cannot say very much in Busch's favor. He is the archetypal playboy. He lives and "works" at Grant's Farm, helping to train elephants and dogs for the public shows there and tending crops and gardens. He spends considerable time in Florida playing polo. He has experimented with cocaine and other illegal substances, but there is no evidence that he has done so recently, or is a substance abuser. He is the beneficiary of a family trust to which he resorts when he needs money. He has a current flame whom he visits regularly and sometimes brings to Grant's Farm. His counsel have stipulated to his ability to pay whatever expenses may be charged against him, possibly to avoid further inquiry into his resources. Even though he demonstrates kindness and concern when he is with Scarlett, and has sustained considerable anguish because of Angela's inadequate supervision of her, I doubt that he will allow his daughter to stand in the way of his pursuit of transient pleasures, but he no doubt will provide competent hired care for her when he is not present. The record shows that he loves his daughter and is concerned about her situation with her mother, who has given him much cause for anxiety. I am persuaded that his motives are proper and not whimsical.

Because the mother is demonstrably unfit some alternative must be provided. Custody is determined in the best interest of the child, and not to punish or reward either parent. Under the master's well supported findings the only reasonable alternatives are custody in Busch or foster care. The former is the far preferable alternative.

In expressing my views I have fully considered the briefing of the guardian ad litem and her tendered exceptions to the master's report, which were not timely presented for his consideration.[3] There is no indication that the guardian ad litem or her ward suffered prejudice because the exceptions were not considered by the master. This Court, as I have said, is the ultimate decisionmaker. We allow Angela substantial visiting privileges. For the reasons stated in the principal opinion I do not believe that joint custody is a desirable alternative at the present time.

With these additional observations, I concur.

WELLIVER, Judge, dissenting.

I respectfully dissent. I fear that what began as a sincere belief of a majority of the Court that this case could be taken out of the realm of venue shopping and perhaps even judge shopping[1] and handled in an impartial, fair and prompt manner, has now deteriorated into a deplorable wreck-

---

3. Simply because the guardian was denied her request for late filing of exceptions does not mean that we have not considered her recommendations. Exceptions to a master's report are usually a formality, and are not necessary to the presentation of points in this Court in a case within our original jurisdiction. Mo.R.Civ.P. 68.03(g) so provides.

1. *January 22, 1988*—Whitson files paternity suit in St. Louis County Circuit Court. *S.M.B. v. W.K.B.*, No. 571631.

*May 25, 1988*—Suit dismissed without prejudice by Petitioner.

*May 26, 1988*—Paternity suit filed in State of California. *Angela T. Whitson, Guardian ad Litem for the minor child, Scarlett Martina Busch v. William K. Busch*, Cause No. VCV01818.

*July 28, 1988*—Paternity suit filed in St. Louis County Circuit Court by Busch. *S.M.B., by her next friend W.K.B. and W.K.B. individually v. A.T.W.*, Cause No. 580658.

*September 30, 1988*—(A.M.) Busch moves to dissolve award of temporary custody and order is dissolved.

*September 30, 1988*—(P.M.) Busch seeks custody under Child Protection Act in St. Louis County, No. 83221. *William K. Busch, In the Interest of Scarlett Martina Busch v. Angela Teresa Whitson*. Juvenile Commissioner recommended it be granted and order was entered on same day.

*October 13, 1988*—Whitson moves to set aside order of September 30, 1988. Motion denied.

*October 14, 1988*—Writ of habeas corpus filed in Missouri Court of Appeals, No. 55557. *In Re the Matter of Scarlett Martina Busch, Angela Teresa Whitson v. William K. Busch*. Writ denied on same day.

*November 17, 1988*—St. Louis County Circuit Court refuses to dismiss Busch paternity suit filed 7-28-88.

*March 18, 1989*—Judge ruled on Motions for Summary Judgment in Cause No. 580658. Ruled paternity of William K. Busch.

ing of the law. While I believe that by reason of the general supervisory power granted to the Court, Mo. Const. art. V, § 4, we had the power to stay all pending proceedings and order them transferred to this Court or to be consolidated in one of the circuit courts to be heard in a single custody proceeding by a special judge—this is not what we did. Rather, we issued a writ of habeas corpus, ordered temporary joint custody placed in the two parties pending final determination, appointed a Master and ordered that he hear the habeas corpus proceeding. I now realize that I and my fellow judges erred in the belief that we had jurisdiction to hear this custody matter in a habeas corpus proceeding, our authority to do so being limited as provided in § 532.370, RSMo 1986,[2] to a proceeding between "husband and wife."

## I

The principal opinion justifies our permitting the Master to broaden the scope of this case based upon two opinions: *W. v. M., W. & W.,* 490 S.W.2d 64, (Mo. banc 1973) and *W–K–M–,* 537 S.W.2d 183 (Mo. App.1976).

In *W. v. M., W. & W.,* the sole issue was whether or not a habeas corpus case dealing with custody was appealable.

This opinion is not to to be taken as enlarging the scope of habeas corpus beyond that which presently exists nor as making habeas corpus available in situations where it is not presently applicable. The issue here is whether or not appeal lies from the judgment of the circuit court entered on a petition for writ of habeas corpus. The court holds that the no-appeal rule in habeas corpus is sound and adheres to it.

*Id.* at 67.

*W–K–M–,* relied on by the principal opinion, involved unwed natural parents and asserted the court's jurisdictional right to determine custody based upon "Rule 91.60, Rules of Civil Procedures: *Ex Parte Lofts,* 222 S.W.2d 101, 104–106 (Mo.App.1949)." *W–K–M, supra,* at 185.

*Lofts* involved a married and previously divorced "husband and wife" and did not touch on the subject of unmarried natural parents. Rule 91.60 has been repealed, but as it existed in 1976, it tracked § 532.370 which is discussed in the principal opinion, which statute provides:

In all cases where it shall appear from the evidence in any proceedings in habeas corpus, instituted between *husband and wife* for the custody of their children under the age of fourteen years, that by reason of insanity, drunkeness, cruelty, or other cause, the party against whom the complaint is brought is unfit to have the care and government of the child or children in controversy, it shall be lawful for the court hearing said cause to award the custody of the same to the complainant or other guardian, as shall be deemed best in the premises, and to make such other orders touching the custody and control of such child or children as the court may deem proper; and the order or decree of court touching said custody shall be valid and remain in force during any period within the minority of said child or children, which shall be fixed by said court; and any person at any time violating said order or decree may be dealt with summarily for contempt.

(Emphasis added.)

*W–K–M,* is wrongly decided. The Court there relied on a case having no applicability and a Rule and statute, both of which were contrary to its opinion.

Three cases have construed § 532.370. *State ex rel. Ahrens v. Rassieur,* 171 S.W. 688 (Mo.App.1914), after quoting the statute says:

It is obvious that this section, [Sec. 2510, RSMo 1909, predecessor to § 532.370] has no application here. This is not a proceeding in habeas corpus between 'husband and wife.' It is said in argument that in drafting this section the General Assembly had in mind the welfare of the child and that although the precise words refer only to the husband and wife, it would seem a harsh construction to say that the lawmakers did not

---

**2.** All references to RSMo 1986 unless otherwise indicated.

intend the statute to extend to those who stand in the position of parents, whether husband and wife or not. It is further said that the order was made in conformity with early practice in the circuit court of the city of St. Louis. We cannot assume that the General Assembly, the lawmaking power, in so specifically confining this exception to cases arising between husband and wife, expressing that idea both in the entitling clause and in the body of the act, intended to extend it to any other cases. There is no room here for judicial construction which would have the effect of extending it.

*Id.* at 689.

*Ex Parte De Castro,* 238 Mo.App. 1011, 190 S.W.2d 949 (1945) said:

The section was designed to invest the court with a greater latitude of power in proceedings "instituted between husband and wife"; but as to cases not brought between husband and wife, the section is wholly without application. *In re Waller,* Mo.App. 234 S.W. 866.

*De Castro, supra,* 190 S.W.2d at 952.

In *In Re Waller,* 234 S.W. 866 (Mo.App. 1921) the court said:

It is to be observed that the proceeding here is not one instituted between husband and wife, for the custody of their child, but is between the father and the maternal grandparents, and hence section 1945, Revised Statutes 1919 [predecessor to § 532.370] is not applicable. Under this section the writ of habeas corpus has a separate and more latitudinous office to perform, but it will serve no good purpose to discuss that provision of the law in this case.

*Id.* at 867.

In the case of *In Re L.G.,* 502 S.W.2d 33 (Mo.App.1973), the court said:

The writ of habeas corpus may be employed to exercise the right of lawful custody, but it may not be employed to interfere with the inherent right and jurisdiction of the circuit courts to determine and award custody of the minor child in cases where they have proper jurisdiction, and in which they have exer-

cised that jurisdiction by making a custody award.

*Id.* at 35 (citations omitted).

The holdings of the Missouri cases could not be more clearly and succinctly summarized than in 2 Mo.Family Law, Sec. X, B (§ 13.36) Habeas Corpus, (Mo.Bar 4th Ed 1988).

The application of habeas corpus proceedings is limited: (1) trying to regain custody from one who has physical custody in violation of an existing order; and (2) trying to regain custody from one who has custody as a result of an invalid order of custody.

*Id.*

Neither exists in this case. We were without authority to make our original order, and, the Master was without authority to expand the issues in the habeas corpus proceeding. We should have ordered the matter handled as a regular circuit court custody proceeding, ordering consolidated such pending cases as we deemed necessary, and ordering in an outside circuit judge if we deemed such to be necessary to the fair and orderly administration of justice.

## II

The guardian ad litem, with the most remarkable degree of restraint and conservatism, states:

Neither Respondent nor Relator are perfect parents by any stretch of the imagination. However, the child will learn and grow with input, both some negative and some positive, from each parent.

. . . .

The Guardian ad Litem feels joint, legal custody in this particular case will encourage shared parenting and responsibility between the parties.

If ever a case could be made for the application of the joint custody contemplated by § 452.375, this is the case. If the Court is determined to get into this expanded version of habeas corpus custody proceedings, now that the father has admitted paternity, the Court should award joint custody and put both parties' feet to the fire to become real parents for Scarlett Martina, at their peril to do otherwise. This is the

**384**

arrangement voluntarily agreed to by the parties pending this proceeding. It is the procedure recommended by the guardian. It is the proper and appropriate procedure.

If the majority believes that the time has come for this Court to expand habeas corpus as a vehicle for determining custody on a permanent basis, then I suggest that the restraint and moderation reflected in the guardian's proposed custody order would be far more workable and far more effective in securing the best interests of Scarlett Martina, as opposed to the vindictive and dictatorial approach of the Master and the principal opinion.

### CONCLUSION

This hearing should be set aside and all pending matters ordered consolidated in the Circuit Court of St. Louis County (Cause No. 580658 and 83221), where, upon proper showing by either party, a special judge could, if required, be assigned, and the matter otherwise handled in the usual and customary manner of handling all other custody proceedings.

For the reasons stated, I cannot join in the principal opinion.

### ORDER

The following items are taxed as costs in this case to be paid as follows:

To Frank D. Connett, Jr., the master, $16,275.00 as compensation, plus $179.22, the balance due on his expenses.

To Gail Berkowitz, the guardian ad litem, $30,335.91 in fees and expenses.

To Karpowitz Reporting Company, $5,918.15 for the transcript in this case.

To Charles E. Bumgardner, $384.00 for a transcript of the pre-trial hearing.

To Irene Mooney, $25.00 for secretarial services for the master.

BLACKMAR, C.J., and WELLIVER and ROBERTSON, JJ., dissent from allowance of Master's fees.