**S.M.B., by her next friend W.K.B. and W.K.B., individually, Plaintiffs–Appellants,**

v.

**A.T.W., Defendant–Respondent.**

No. 58013.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 30, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1991.

Application to Transfer Denied
July 23, 1991.

David Wells and Linda Carroll Goyda, St. Louis, for plaintiffs-appellants.

Michael J. McAvoy, Fenton, Allan F. Stewart and Catherine Ward Keefe, Clayton, for defendant-respondent.

SATZ, Judge.

This is a paternity case in which W.K.B., the father, is appealing an award of attorneys' fees to the attorneys of A.T.W., the mother. We reverse and remand.

This case is one of several interrelated cases filed by the parties at various times. All these cases raised the issues of paternity and custody of the child. Although the complete details of all of the other cases are not essential to this case, some limited understanding of their procedural history helps the analysis of the issues before us.

For clarity, we have named and listed the cases, including their respective significant events. The first three listed cases, although relevant, are less meaningful than the rest of the listed cases. These first three and their respective events are listed by case, rather than chronologically. The remaining cases and their events are listed, generally, in a chronological order.

### Procedural History

#### Mother's Paternity Case

On January 20, 1988, the mother filed a petition in the St. Louis County Circuit Court seeking a declaration that the father is the natural father of the child and an order granting the mother custody of the child. On May 26, 1988, the mother dismissed her petition without prejudice.

#### Mother's California Case

On May 27, 1988, the mother filed a petition in a California Court again seeking a declaration of the father's paternity, her custody of the child and child support. On September 29, 1988, the father filed a motion to quash summons, which was granted on October 21, 1988.

#### Mother's Adult Abuse Case

On September 29, 1988, the mother filed an adult abuse petition in St. Louis County Circuit Court. The court apparently issued three ex parte orders: 1) a grant of temporary custody of the child to the mother; 2) a grant of temporary custody of another of the mother's children to her; and 3) an order of protection against the father for the benefit of the mother. On September 30, 1988, the father moved to dissolve the ex parte orders. The orders of temporary custody were dissolved. On October 4, 1988, the order of protection was returned non-est.

#### Father's Paternity Case

This is the present case. On July 25, 1988, S.M.B., the minor child, by her next friend, the father, and the father individually sued the mother seeking a declaration that the father is the natural father of the child and an order granting him permanent custody of the child. On December 7, 1988, the mother filed her answer, and a cross-petition, seeking a declaration of the father's paternity, custody of the child, child support and "costs and attorney's fees in this action."

#### Protective Order Cases

On September 30, 1988, while his Paternity Case was pending, the father filed, in a separate case, a petition for an order of protection, alleging the mother was neglecting the child and seeking custody. Apparently, this petition was transferred to a Commissioner in the juvenile court who recommended that temporary custody be awarded to the father and that a hearing be set on the issue of custody. The trial court granted the father temporary custody, and apparently set the petition for hearing before the Commissioner on November 8, 1988.

Subsequently, on October 28, 1988, in a separate case, the mother filed a petition for an order of protection, seeking an ex parte order protecting the mother from

the father and requesting a hearing at which the mother would seek both custody of the child and child support. The request for an ex parte order was denied, but, apparently, a hearing was set before the Commissioner on this petition on November 8, 1988, the same date for hearing the father's petition for an order of protection.

*Prohibition Case in Supreme Court*

On November 7, 1988, the day before the hearing on the petitions for the orders of protection, the mother filed a petition captioned "petition for writ of prohibition" in our Supreme Court, seeking to set aside the ex parte order of protection issued to the father and to prohibit the trial court from "assigning the Petition for Order of Protection to a Commissioner of the Juvenile Court."

On that same day, that Court issued its preliminary order in prohibition and also ordered the trial court to set aside its ex parte order of protection awarding temporary custody of the child to the father.

*Mother's Habeas Corpus Case in Supreme Court*

On the next day, November 8, 1988, the mother filed a petition in the Supreme Court requesting a writ of habeas corpus to issue against the father, based on the allegation that he was illegally restraining the child. The mother also sought custody of the child. The court granted the writ, ordered the mother and father to share custody during the habeas corpus hearing, and assigned this case to a Special Master for the hearing.

The Master apparently expanded the hearing to include the paternity of the child, the parties' fitness, custody, visitation, child support and attorney's fees. After a hearing, the Master issued his Findings of Fact, Conclusions of Law and Recommendations on May 9, 1989.

*Father's Paternity Case*

At the request of the father, on May 19, 1989, the Supreme Court issued its preliminary order of prohibition, prohibiting the trial court from proceeding in the Father's Paternity Case.

On September 8, 1989, the Supreme Court issued its decision based upon the report of the Master. *State ex rel Busch by Whitson v. Busch*, 776 S.W.2d 374 (Mo. banc 1989) (*Busch*). A few days later, the Court dissolved its preliminary order in prohibition.

On December 19, 1989, the trial court held a hearing on the mother's prayer for "costs and attorney's fees in the [present case]", the Father's Paternity Case. The court awarded the attorneys $77,641.32 for "fees" and "costs", $67,821.31 to Mr. Michael McAvoy and $9,820.01 to Mr. Allan Stewart.[1] This appeal by the father followed.

*Issues on Appeal*

As can be seen, the issues of paternity, fitness of the parties, child custody and child support were common to almost all of the cases between the parties. Those issues were addressed and disposed of by the Supreme Court in *Busch, supra.* The Court adopted the Master's recommendation on attorneys' fees and expenses and awarded Mr. McAvoy $57,037.19 and Mr. Stewart $7,775.35.

The father challenges the award of attorneys' fees in the present case on several grounds. We address first his res judicata argument which, on the record before us, requires us to reverse and remand the case.

As we understand the father's res judicata argument, it is two-fold. The two specific arguments, facially, appear to be the same.

First, the father argues that the mother's attorneys admit the fees they now seek

---

1. The award of attorneys' fees here was made directly to the mother's attorneys, not the mother, with the Court ordering money judgments entered in their favor. To us, and to the attorneys in their briefs, the record shows the hearing below was had on prayers for costs and attorneys' fees in the mother's cross-petition, although the trial court in its order refers to a hearing on "Respondent's [the mother's] motion." For convenience and clarity, we refer to the moving party here as the mother not her attorneys.

were sought in the Habeas Corpus Case, *Busch.* The issue of those fees, he contends, was addressed and disposed of in *Busch;* therefore, he contends, the attorneys are barred by the doctrine of res judicata, claim preclusion, from relitigating that issue in the present case.

Second, the father contends that work done and compensated for in *Busch* was no different than the work for which the mother's attorneys now seek compensation; therefore, the award of attorneys' fees here is an improper double recovery for the same work.

Based on the record before us, we find the first argument well-taken in part and misdirected in part. The second argument we find persuasive.

### Claim Preclusion

The father contends the issue of attorneys' fees here is an "issue already squarely presented and conclusively resolved by the Missouri Supreme Court" in *Busch, supra,* the Habeas Corpus Case. The father reasons as follows.

In *Busch,* the mother's attorneys requested an award of fees for their representation of her from the time they each were employed through all the proceedings before the Supreme Court. The present case is a repeat performance of the request for fees previously addressed. The mother's attorneys either requested or could have requested in *Busch* the fees they now seek. Since the Master and, in turn, the Court, in *Busch,* already addressed and disposed of the same fee requests made or which could have been made, the attorneys' present claim for fees is precluded by the doctrine of res judicata. We read and interpret the legal effect of *Busch* differently than the father.

Mr. McAvoy was hired by the mother on August 27, 1987. Mr. Stewart was hired by Mr. McAvoy on behalf of the mother on October 21, 1988. At the hearing before the Master, in *Busch,* they each apparently requested fees for the entire time they represented the mother. The Master, however, limited their fees to the time spent on

the case before him. In arriving at his recommended awards to each attorney, he

> deducted all fees and expenses incurred before the preparation and filing of the Writ of Habeas Corpus ... and the fees and expenses included in the prosecution or defense in other related cases in St. Louis and California....

The Court adopted that recommendation. *Busch,* 776 S.W.2d at 378.

Certainly, the Master's recommendation and the Court's decision was proper, reasonable and predictable. We know of no legal principle which empowers a court to award fees to an attorney in one case for work done in another case, without some demonstrated compelling reason to do so. The record before us does not so demonstrate. Simply stated, in *Busch,* the attorneys were awarded fees for the work done in the Habeas Corpus Case, no more, no less. *Busch* did not decide whether the attorneys were entitled to fees for other work done in other cases.

■ Res judicata, claim preclusion, precludes a party from litigating a claim against another party that has already been litigated. *Jacobs v. Corley,* 732 S.W.2d 910, 913 (Mo.App.1987). Collateral estoppel, issue preclusion, precludes the relitigation of an issue previously decided. *Id.* To support his application of those principles here, the father relies on *Potter v. Desloge,* 625 S.W.2d 927 (Mo.App.1981). This reliance is misplaced.

In *Potter,* the husband had filed a motion to modify a divorce decree and the wife moved for attorney fees, costs and expenses incurred in responding to the motion. The trial court dismissed the husband's motion, awarded the wife costs but did not mention fees or other expenses. The husband appealed the denial. The appellate court reversed the denial and "upheld the [husband's] motion on the merits." *Id.* at 929, n. 2.

The wife then filed another motion for attorney fees, seeking fees for both her opposition in the trial court to the husband's motion to modify and for "attorney's fees on appeal." The trial court awarded the requested fees. The husband

appealed, arguing the first decision by the trial court was res judicata on the fee issue. The court of appeals agreed and reversed the award of fees incurred in responding to the motion to modify. The court stated, "[wife's] first motion for attorney fees was properly before the trial court when it ruled on [husband's] motion to modify. The trial court failed to grant attorney fees. It follows that the issue of attorney fees for the trial of the motion to modify had been adjudicated." *Id.* at 930.

Here, the father argues, the mother's request for fees for all work in all cases was before the Supreme Court in the Habeas Corpus Case and the court gave only a portion of the fees requested. Therefore, the fee award is res judicata on any request for fees for the same work. We disagree.

■ The similarity between *Potter* and the present case seen by the father is based upon his misreading of the *Busch* case. As we have stated, we read *Busch* as declining to address the issue of fees in the cases other than the Habeas Corpus Case. Before res judicata bars a claim, the previous determination must have been on the merits of the claim. *Owens v. Government Employees Ins. Co.,* 643 S.W.2d 308, 310 (Mo.App.1982). Where there is a question whether the previous decision went to the merits of the case, no preclusive effect is given to the earlier decision. *Id.*

■ There is no need here to speculate on why the Court in *Busch* did not address other requested fees. Suffice it to say, the Court did not; therefore, there was no decision on the merits of the attorneys' fees in the other cases and neither the doctrine of claim preclusion or issue preclusion applies to bar the attorney from seeking fees now for work done in the present case.

However, it appears from the record that the mother is now seeking fees for some of the work the attorneys did in *Busch.* Mr. McAvoy testified he did not necessarily

eliminate from his present fee request all the time that related to the *Busch* case. Mr. Stewart also testified he included in his present request time spent briefing and arguing the case before the Supreme Court in *Busch.* The Supreme Court obviously addressed and decided the issue of any fee award for that case. Any fees the mother desired for that work either were requested there or should have been.

If the fees were actually requested, the Supreme Court's opinion in effect denies that request and such denial is res judicata. *Potter,* 625 S.W.2d at 930. If the fees were not requested, the failure to do so precludes the mother from seeking them now. *Brown v. Brown,* 609 S.W.2d 223 (Mo.App.1980).

We cannot determine from the record before us, however, the exact amount of the present fee award, if any, that is attributable to work done in *Busch.* For the reasons which follow, we must remand this case for resolution of this question and other unresolved questions.[2]

### *Double Recovery*

The father also argues the attorneys' fees awarded in the present case are duplicative of the fees already awarded in *Busch,* and, therefore, the attorneys have received a double recovery for the same work. To understand this argument, the facts must be fleshed out.

At a hearing below, both of the mother's attorneys testified in support of the mother's request for attorneys' fees and expenses. Summaries and time slips of their time spent in representing the mother, apparently, were admitted into evidence. Also apparently admitted into evidence was Mr. McAvoy's testimony in *Busch* in support of the fee request he made in that case. The files of the related cases between the parties filed in St. Louis County Circuit Court were properly before the court below.

**2.** The father also argues the trial court here lacked jurisdiction to order a fee award because the Supreme Court in *Busch* had "superior and exclusive jurisdiction" over the entire dispute by virtue of its writ of habeas corpus. This argument tracks and, in substance, is basically the same argument as the father's res judicata argument. Resolution of the res judicata argument, thus, also resolves this argument.

Both attorneys testified that the award of attorneys' fees in *Busch* was based on temporal limits. In *Busch*, they testified, they were awarded fees for the work they did from the time the petition for the writ of habeas corpus was filed, November 8, 1988, until the hearing on the writ before the Master was completed, April 7, 1989. In the present case, both attorneys requested fees for all the other times they spent in representing the mother.

Mr. McAvoy requested fees from the day he was hired by the mother, August 27, 1987, through November 9, 1988, about 423.5 hours, and from the day after the hearing before the Master, April 8, 1989, through September 28, 1989, about 244.7 hours.

Mr. Stewart said the Master awarded him fees for work done from November 4, 1988 through April 6, 1989. He was hired, he said, on October 21, 1988. He requested fees for work done from that date until November 4, 1988, about 53.8 hours, and for work done from April 13, 1989 through June 15, 1989, about 23.5 hours, in briefing and arguing the *Busch* case before the Supreme Court.

To state the obvious, the mother, as cross-petitioner and moving party, had the burden of supporting her request for attorneys' fees. *See E.g., Hautly Cheese Co. v. Wine Brokers, Inc.*, 706 S.W.2d 920, 922 (Mo.App.1986); *Gentry v. Simmons*, 754 S.W.2d 579, 583–84 (Mo.App.1988). She must show the work for which she now seeks fees was reasonable and necessary to the present case. *Gentry, supra.* On the present facts, that burden required a showing the work done on the related cases can be compensated in the present case and the work for which she seeks fees has not already been compensated in the *Busch* case. This showing is not made in the record before us.[3]

From the record before us, there is no question that the mother is seeking fees for work which may have been done in connection with the related cases and not necessarily done for processing the present case. The record before us, however, con-

tains only the oral testimony of the attorneys and does not contain the summaries of their time or their time slips, which apparently were admitted into evidence. The oral testimony is too general for us to determine whether the fees awarded the attorneys were awarded to them for work done only on the present case or for work done on this case as well as the related cases, in particular, the Habeas Corpus Case.

Admittedly, neither party here requested Findings of Fact and Conclusions of Law, and on appeal, the father, the appellant, has not made part of the record before us the summaries of time or time slips which were apparently admitted into evidence.

 Usually, when neither party requests Findings of Fact and the court does not make any Findings, all fact issues are presumed to have been found in accord with the result reached. *E.g. Heady v. Heady*, 766 S.W.2d 489, 491 (Mo.App.1989); Rule 73.01(a)(2). Moreover, the appellant usually has the burden of providing a complete record and demonstrating error. *In re Marriage of Brooke*, 773 S.W.2d 496, 498 (Mo.App.1989); Rule 81.15. And, usually, if exhibits admitted into evidence at trial are not filed on appeal, they are presumed to support the trial court's findings. *Id.*

These legal presumptions are legal fictions sensibly made in the usual case for judicial economy and the expeditious processing of appeals. They normally are consistent with the incomplete record before the appellate court and, thus, normally square with common sense. They are not, however, consistent with the record before us and, thus, do not necessarily square with common sense.

 Both of the mother's attorneys have admitted they were seeking payment for work done on cases other than the present case, including work done before the Supreme Court in *Busch*. The trial court stated, on the record, that it was not going to award Mr. McAvoy fees for work done in connection with the California Case. Nothing in any of the discussions on the

---

**3.** If the attorneys were considered the moving parties, their burden would be no different.

record, however, indicates the trial court was going to exclude from consideration time spent on the other cases that had already been dismissed or time spent before the Supreme Court in *Busch.* To the contrary, the record before us shows the court contemplated an award based on work done not only in the present case but on work done in the related cases, including the *Busch* case. However, on the present record, the mother's attorneys cannot now recover fees for other work in other cases already dismissed, *Flach v. Flach,* 645 S.W.2d 718, 722 (Mo.App.1982), and the doctrine of res judicata bars them from recovering for work done in connection with the *Busch* case. *Brown v. Brown, supra.*

Thus, what we have gleaned from the record shows the fee award includes matters not properly chargeable here. Moreover, it shows that the entire request by both attorneys contains time for which they cannot now be compensated. However, nothing in the record shows how the trial court arrived at the fee award it did make and nothing even suggests the trial court excluded other time submitted by the attorneys that was not compensable here.

There is an additional defect in the record. All the fees requested were for work done on interrelated cases. Therefore, in order to show she is not seeking double recovery for work done, the mother must show the substance of the work for which she now seeks compensation was different from the work for which they have already been paid.

Before a party may recover a fee award, he must show the work done was reasonable and necessary to the case. *See Gentry, supra,* 754 S.W.2d at 583–84. Obviously, work that merely repeats the substance of other work is not necessary or reasonable. In this case, the mother's attorneys were doing work on several interrelated but different cases involving the same issues. Unless she shows she is not seeking an award based upon duplicative work, she cannot recover. *Id.* In short, on the present record, we simply cannot affirm the fee award made by presuming the defects and gaps in the record merely omit facts consistent with the award.

### Mother's Argument

The mother argues that the father had an opportunity to and did cross-examine her attorneys about their fee charges. She also notes the trial court "itself is possessed of knowledge in its own right to determine the reasonableness of attorney's fees." These arguments, on the facts here, are not persuasive.

Whatever curative effect cross-examination and a trial court's expertise might have in the usual fee award case, the cure is not apparent on the record before us. The present record does not show the mother's attorneys were entitled to be compensated in the present case for work done in other cases. And, there is no express or implicit showing in the record that the court excluded work done in other cases in making its fee award in the present case.

### Father's Remaining Arguments

We address and dispose of the remaining arguments of the father to make this disposition the law of the case on remand.

The father argues the trial court erred in awarding fees because there was no evidence of the financial conditions of the parties and this evidence is crucial to a fee award. He cites *In re Marriage of Sumners,* 677 S.W.2d 435 (Mo.App.1984). In *Sumners,* although there was no evidence of any relevant factors other than the wife's financial condition, the court did not reverse outright but remanded the case for further proceedings. *Id.* at 436. Thus, even assuming we agreed with father's complaint here about lack of evidence, *Sumners* would not necessarily require us to reverse the judgment without remanding.

However, we disagree that the trial court lacked sufficient information about the financial conditions of the parties. From the record, it appears that the father himself offered into evidence the Findings of Fact the Master made in *Busch.* In his Findings of Fact, the Master found that the mother was unable to pay her fees and the father could. The Supreme Court apparently accepted this conclusion. It awarded all the fees the Master recommended. Thus, the

financial conditions of the parties was a material fact litigated and decided in *Busch* and is res judicata between these parties as of the date *Busch* was decided, September 8, 1989. *Welker v. Welker*, 680 S.W.2d 282, 284 (Mo.App.1984).

The hearing in the present case was held on December 19, 1989, some two months after the *Busch* decision. To suggest the financial positions of the parties significantly changed during that time defies practical logic. Moreover, it contradicts the record. On cross-examination, Mr. McAvoy stated that, at the time of the hearing below, the mother was not working and, to the best of his knowledge, she received, as income, about $3,000 since April, 1989.

The father also argues the attorneys are not entitled to recover more than the amount awarded by the Supreme Court because the result they reached in the case was "remarkably poor." The father cites *Murphy v. Grisham*, 625 S.W.2d 215, 217 (Mo.App.1981), for the proposition that the result produced is one factor to consider in determining the amount of a fee award. Under *Murphy*, however, the outcome is but one of the factors to be considered. *Id.* The trial court must consider all the relevant factors and has broad discretion in awarding fees. *Id.; Bray v. Bray*, 629 S.W.2d 658 (Mo.App.1982). Nothing in *Murphy* suggests a "poor result" by itself precludes a fee award, and nothing in the present record nor in the father's brief persuades us we should so hold.

For the foregoing reasons we reverse the judgment of the trial court and remand this cause to it to make a fee award, if any, consistent with the record before it, in accord with this opinion and supported by appropriate Findings of Fact and Conclusions of Law.

SMITH, P.J., concurs.

CARL R. GAERTNER, J., concurs in separate concurring opinion.

CARL R. GAERTNER, Judge, concurring.

I concur but write separately to emphasize that the remand of this case is for the limited purpose of reviewing the existing record and distinguishing between the lawyers' time and effort attributable solely to this case and that attributable to the dismissed actions and the Habeas Case. The identity of issues pervading all of the cases renders mere reference to the date on which the work was performed an imperfect standard by which to measure attribution to one case or another. Rather, the key to entitlement to an award of attorneys fees in this case is a showing that what was done, the substance of the work, was reasonable and necessary in this case and not duplicative or utilized in one of the other cases. For example, legal research, factual investigation and witness interviews pertaining to the issue of custody, although performed before the filing of the Habeas Corpus Action, were pertinent to that action and compensation for that work has or should have been awarded by the Supreme Court. Conversely, the drafting of pleadings and procedural matters in the husband's paternity action are a proper subject of compensation in this case. If the evidence presented to the trial court, including the lawyer's time records which are not before us, fails to show such a distinction, mother and her attorneys have not met their burden of proving the work performed was reasonable and necessary for the prosecution of this case.